**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION

CASE NO.:

(Fla. Cir. Ct. Case No. 09-16551 CA 32)

# 09-21041

## CIV - GOLD

SUSAN ROOT,

    Plaintiff,

vs.

MIAMI-DADE COUNTY,

    Defendant.

    ] McALILEY

_____/



### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441(a), (c) and 1446, Defendant Miami-Dade County (the "County") files this Notice of Removal and removes this action to the United States District Court for the Southern District of Florida, Miami Division, based on the facts and provisions set forth below:

1.    This case was originally filed in the Circuit Court of the 11th Judicial Circuit for Miami-Dade County and styled *Susan Root v. Miami-Dade County*, case no. 09-16551-CA-32. A copy of the Summons and Complaint is attached hereto as Exhibit A.

2.    The Complaint alleges employment discrimination and alleges that the Court has jurisdiction pursuant to the Civil Rights Act of 1964. The Complaint cites the federal statute where the Civil Rights Act is codified namely 42 U.S. C. § 2000, et. Seq. The Complaint also seeks declaratory relief pursuant to the federal statutes codified at 28 U.S.C. §§ 2201 and 2202. *See Complaint* ¶ 4.

3.     Because the Complaint contains a claim brought under federal law, this Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), making this action removable pursuant to 28 U.S.C. § 1441(a) and (b).

4.     Venue is proper in this Court because the alleged actions took place within the Southern District of Florida.

5.     This Notice is being filed within thirty (30) days after service of the Complaint. In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon the County are attached hereto.  Pursuant to F.R.C.P. 81(a), Defendant's motion to dismiss filed in state court is attached as Exhibit B.

6.     Written notice of the County's removal of this action is being provided to Plaintiff, and a copy of this Notice of Removal is being filed with the Clerk of the State Court, as required by 28 U.S.C. § 1446(d).

WHEREFORE, the County respectfully requests that this Court accept and retain removal jurisdiction over this action.

Dated: April 20, 2009

Respectfully submitted,

R. A. CUEVAS, JR.
MIAMI-DADE COUNTY ATTORNEY

By:     _____
Eric A. Rodriguez
Assistant County Attorney
Florida Bar No. 970875
E-Mail: ear2@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone:   (305) 375-5628
Fax:     (305) 375-5634

2

Susan Root v. Miami-Dade County

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by mail

this 20th day of April, 2009, on all counsel or parties of record on the attached service list.

_____

Assistant County Attorney

3

## SERVICE LIST

*Susan Root v. Miami-Dade County*
Case No. _____
United States District Court, Southern District of Florida


William Pena Wells, Esq.
E-Mail:
P.O. Box 640911
North Miami Beach, FL 33164-0911
Tel: (305) 898-0243

Attorney for Plaintiff Susan Root
Service by U.S. Mail

Eric A. Rodriguez
Assistant County Attorney
E-Mail: ear2@miamidade.gov
Miami-Dade County Attorney's Office
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, FL 33128
Tel:   (305) 375-5628
Fax:   (305) 375-5634

Attorney for Defendant Miami-Dade County
No Service Made

4

*lee 09-1308 /*

*MCV 3:50pm*

## IN THE CIRCUIT COURT, 11TH JUDICIAL CIRCUIT
## IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SUSAN ROOT,
    **Plaintiff,**

v.

MIAMI DADE COUNTY, FLORIDA
    **Defendant.**

_____/

**CIVIL ACTION**

**Case No. :**

**09  16551CA32**

*935*

*3/20/09*
*3 50 PM*

**SUMMONS**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on defendant:

### MIAMI-DADE COUNTY, FLORIDA

        To be served:  **Mayor Carlos Alvarez**
                         Stephen P. Clark Center
                         111 N.W. 1st Street, 29th Floor
                         Miami, Florida 33128

Each defendant is required to serve written defenses to the complaint or petition on William Pena Wells, Esq., plaintiff's attorney, whose address is Post Office Box 640911, North Miami Beach, Florida, 33164-0911 within thirty (30) days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

DATED on ................  **MAR 0 2 2009**

HARVEY RUVIN
As Clerk of the Court

By: *Jose Almonte 8330*
    _____
As Deputy Clerk

*2009 MAR 23  PM 2:25*
*MIAMI-DADE COUNTY ATTORNEY*

**EXHIBIT**

**A**

IN THE CIRCUIT COURT, 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

SUSAN ROOT,                                    CIVIL ACTION
    Plaintiff,                        Case No.: **0 9   1 6 5 5 1 CA 3 2**

v.                                             GENERAL JURISDICTION DIVISION

MIAMI DADE COUNTY, FLORIDA
    Defendant.

_____/

## COMPLAINT, DEMAND FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL.

### PARTIES, JURISDICTION AND VENUE.

1. Plaintiff, Susan Root is a 57 year old female Caucasian, a citizen of the United States and a resident of Miami-Dade County, Florida.

2. The Defendant is Miami Dade County, Florida, a political subdivision of the State of Florida.

3. At all times relevant to the complaint herein, the Defendant conducted business within Miami-Dade County, Florida and is otherwise within the definitions of "employer."

4. Jurisdiction and Venue are proper in this Court pursuant to the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq, to secure redress for deprivations of rights granted to the Plaintiff in her employment by the acts or omissions of the Defendant, Miami Dade County,

Florida.   Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Sections 2201 and 2202.

Plaintiff seeks injunctive relief, declaratory relief, and damages to redress the Defendant's

unlawful employment practices.

5.   Plaintiff filed a charge against the Defendant for violations of Title VII of the Civil Rights Act

of 1964, as amended (See Plaintiff's Exhibit A, which is attached as though fully set forth

herein). The EEOC issued a determination permitting the Plaintiff the right to commence an

action in the appropriate forum within 90 days of receipt of the notice. (see Exhibit B which is

attached to the Complaint and incorporated as though fully set forth herein). Plaintiff has

commenced the instant action within the appropriate jurisdictional time limit provided by law.

6.   Pursuant to Florida Statute Section 768.28 the Defendant has been served with Notice of this

Claim, concurrently with tendering said notice to the Florida Department of Financial Services.

The Department is, pursuant to said statute, also to be served with process in this matter. All

conditions of precedent have been satisfied.

### FACTUAL BACKGROUND.

7.   Plaintiff SUSAN ROOT began her employment with Defendant MIAMI-DADE COUNTY,

FLORIDA on December 29, 1980 as a Clerk Typist II. This position was within the Classified

Personnel Services of Miami Dade County.   Her yearly performance evaluations were

satisfactory.

8.   On or about April 25, 1994, the Plaintiff transferred to the MIAMI-DADE COUNTY,

FLORIDA Corrections and Rehabilitation Department (hereafter referred to as "C&R") as a

Clerk Typist 2, which was within the Classified Personnel Services of Miami-Dade County.

Her yearly performance evaluations were satisfactory.

9. On or about March 27, 1995 the Plaintiff was promoted and began working as an

Administrative Secretary for Commander Eduardo Astigarraga, of the C&R. Her yearly

performance evaluations were satisfactory.

10. Thereafter, the Plaintiff transferred as an Administrative Secretary for Captain Joyce Chester, at

the Training and Treatment Center, which was a position which is considered an "Exempt"

Employee, not subject to the Personnel Rules of the Defendant MIAMI DADE COUNTY,

FLORIDA. Said position is NOT within the "Exempt" Employee category defined by the

Miami-Dade County Code, Section 2-41 (6). Said section limits "Exempt" employees to those

who are: "*(6) Department directors, deputy department directors, assistant department*

*directors, division directors, agency heads, board of directors, consumer advocates, program*

*directors and all immediate assistants and all immediate assistants and all secretaries to the*

*foregoing. .*" All ***other*** employees of the Defendant are required to be considered to be under

the County Merit System. Section 2-40 states, "*There is created a merit system of personnel*

*administration for the County, which system shall be based on merit principles and scientific*

*methods governing the selection, appointment, promotion, transfer, lay-off, removal, discipline,*

*and welfare of the employees of the County, and other incidents of County employment. All*

*appointments and promotions in the County merit system shall be made solely on the basis of*

*merit and fitness."* At no point in her employment was the Plaintiff notified that this position at

the Training and Treatment Center was not eligible to be considered "exempt" under Section 2-

41(6). In fact, the opposite is the case. At all times material to this Complaint, the Plaintiff was

improperly informed that she was not eligible for the employee protections of civil service

granted to non-Exempt employees. Her yearly performance evaluations were satisfactory.

11. Subsequently, the Plaintiff transferred as an Administrative Secretary for Captain Manny

Fernandez, at the Turner Guilford Knight Correctional Center, which was a position which is

considered an "Exempt" Employee, NOT subject to the Personnel Rules of the Defendant

MIAMI-DADE COUNTY, FLORIDA. Said position is not within the "Exempt" Employee

category defined by the Miami Dade County Code, Section 2-41 (6). Said section limits

"Exempt" employees to those who are:  "(6) "Department directors, deputy department

directors, assistant department directors, division directors, agency heads, board of directors,

consumer advocates, program directors and all immediate assistants and all immediate

assistants and all secretaries to the foregoing.   All ***other*** employees of the Defendant are

required to be considered to be under the County Merit System.  Section 2-40 states, "*There is*

*created a merit system of personnel administration for the County, which system shall be based*

*on merit principles and scientific methods governing the selection, appointment, promotion,*

*transfer, lay-off, removal, discipline, and welfare of the employees of the County, and other*

Page 4 of 15

*incidents of County employment. All appointments and promotions in the County merit system shall be made solely on the basis of merit and fitness."* At no point in her employment was the Plaintiff notified that this position at TGK was not eligible to be considered "exempt" under Section 2-41(6). In fact, the opposite is the case. At all times material to this Complaint, the Plaintiff was improperly informed that she was not eligible for the employee protections of civil service granted to non-Exempt employees. Her yearly performance evaluations were satisfactory.

12. Thereafter, the Plaintiff transferred as an Administrative Secretary for Commander Terry Browne.

13. On or about October 2002, the Plaintiff began working as an Administrative Secretary for Commander Myriam Kovacs.

14. On or about June 28 2007, the Plaintiff transferred to the Position of Administrative Secretary to Captain Marvin Ramsey, supervisor of the Turner Guilford Knight Correctional Center. (hereafter referred to as "TGK"), which was a position which is considered an "Exempt" Employee, not subject to the Personnel Rules of the Defendant MIAMI-DADE COUNTY, FLORIDA. Said position is NOT within the "Exempt" Employee category defined by the Miami Dade County Code, Section 2-41(6). Said section limits "Exempt" employees to those who are: *"(6) Department directors, deputy department directors, assistant department directors, division directors, agency heads, board of directors, consumer advocates, program*

*directors and all immediate assistants and all immediate assistants and all secretaries to the foregoing.*" All **other** employees of the Defendant are required to be considered to be under the County Merit System.   Section 2-40 states, "*There is created a merit system of personnel administration for the County, which system shall be based on merit principles and scientific methods governing the selection, appointment, promotion, transfer, lay-off, removal, discipline, and welfare of the employees of the County, and other incidents of County employment. All appointments and promotions in the County merit system shall be made solely on the basis of merit and fitness.*" At no point in her employment was the Plaintiff notified that this position at TGK was not eligible to be considered "exempt" under Section 2-41(6). In fact, the opposite is the case. At all times material to this Complaint, the Plaintiff was improperly informed that she was not eligible for the employee protections of civil service granted to non-Exempt employees. This was stated to her explicitly in two letters from the Labor Management Division of the Human Resources Department of MIAMI-DADE COUNTY, FLORIDA (see Exhibit D).  The first letter was August 14, 2007, from Mark L. Deutsch, Senior Labor Management Specialist. The second letter was February 11, 2008, from Jose D. Fraguela, Senior Labor Management Specialist. In any disciplinary action material to this Complaint, the Plaintiff was never given the appeal rights normally permitted to County Employees in the Classified Service.

15. Plaintiff continued to perform in a satisfactory manner, as evidenced by her performance evaluations, [see e.g., Evaluations of September 21, 2007, (Exhibit E) and July 9, 2008 (Exhibit

F) and incorporated as though fully set forth herein], and a letter from her supervisor, Captain

Ramsay, [see e.g., letter dated July 27, 2007, (Exhibit G) which is incorporated as though fully

set forth herein].

16. The Plaintiff complained to her superiors, specifically Commander Myriam Kovacs and Captain

Edwin Cambridge about the discrimination and retaliation on or about the 30th day of April

2007. No corrective action was taken regarding this unlawful action. Rather than address these

complaints by Plaintiff, the Defendant's supervisory employees dismissed Plaintiff's reports by

telling her that they did not want to hear about them.

17. The Plaintiff complained to her superiors, specifically Commander Myriam Kovacs, Chief

Denise Bendross, Fair Employment Practices Administrator Valerie Ephriam-Kelly, Assistant

Director Nancy Vinock and Director Timothy P. Ryan, about the lack of Employee Evaluation

appeal rights as mandated by the Human Resources Labor Management Division of MIAMI-

DADE COUNTY, FLORIDA, harassment, discrimination, and retaliation on or about the 5th

day of May 2007. No corrective action was taken regarding this unlawful action. Rather than

address these complaints by Plaintiff, the Defendant's supervisory employees dismissed

Plaintiff's reports by telling her that they did not want to hear about them.

18. On or about June 15, 2007, the Plaintiff filed an EEOC Complaint regarding discrimination

alleging unlawful actions by the Defendant. The EEOC issued a right to sue letter to the

Plaintiff in this matter and the Plaintiff allowed the matter to lapse without litigation.

19. Thereafter, the Plaintiff was subjected to harsher discipline, scrutiny of her job performance, additional discipline not given to workers similarly situated for the same offense, and additional workloads and duties with shorter deadlines in retaliation for her filing of the EEOC complaint referred to above. Plaintiff then complained to her supervisor about these alleged unlawful practices in retaliation and the resulting effects these were having on her health to no avail.

20. The Plaintiff complained to her superiors, specifically Professional Compliance/Internal Affairs Chief MaryAnn Puig, about the retaliation on or about the 18th day of June 2007. No corrective action was taken regarding this unlawful action. Rather than address these complaints by Plaintiff, the Defendant's supervisory employees ignored departmental procedures mandated by the MIAMI-DADE COUNTY C&R Departmental Operating Procedures Manual and State of Florida law, ignored and eventually dismissed Plaintiff's concerns.

21. Rather than address the Plaintiff's concerns, the Defendant allowed Plaintiff to continue with additional retaliation. On or about the 6th of July 2007, the Plaintiff received written disciplinary action in retaliation for filing complaints. These disciplinary actions resulted in loss of wages and other negative impacts upon the Plaintiff's permanent employee records.

22. The Plaintiff complained to the County Manager's Office specifically County Manager George M. Burgess and the Ethics Commission specifically Ethics Commission Director Robert Meyers of MIAMI-DADE COUNTY about the 5th day of February 2008 about the Retaliation. Rather than address the Plaintiff's concerns, the Defendant took no corrective action regarding this

unlawful action.

23. The Plaintiff complained to her superiors, specifically Professional Compliance/Internal Affairs Chief MaryAnn Puig, Captain Marvin Ramsey, Commander Myriam Kovacs, Lieutenant Wanda McMullen, Chief Manny Fernandez and Director Timothy P. Ryan, about the retaliation on or about the 16th day of January 2008. No corrective action was taken regarding this unlawful action. Rather than address these complaints by Plaintiff, the Defendant's supervisory employees ignored departmental procedures mandated by the MIAMI-DADE COUNTY C&R Departmental Operating Procedures Manual, ignored and eventually dismissed Plaintiff's concerns.

24. On or about 28th, day of January 2008, the Plaintiff filed an EEOC Complaint regarding retaliation alleging unlawful actions by the Defendant. The EEOC issued a right to sue letter to the Plaintiff in this matter and the Plaintiff is still within the allowable time frame expressed by the EEOC for litigation.

25. The Plaintiff complained to the MIAMI-DADE COUNTY, FLORIDA Mayor's Office specifically The Honorable Carlos Alvarez in a public town hall meeting convened by the National Organization for the Advancement of Colored People (hereafter referred to as NAACP) in mid-March 2008 and met with Bishop Victor T. Curry , NAACP Representative on May 14, 2008 about the Retaliation. Rather than address the Plaintiff's concerns, the Defendant took no corrective action regarding this unlawful action.

26. Rather than address the Plaintiff's concerns, the Defendant allowed Plaintiff's less experienced and less senior employees to receive preferential promotion.

27. Thereafter, the Plaintiff was again subjected to harsher discipline, scrutiny of her job performance, additional discipline not given to workers similarly situated for the same offense, and additional workloads and duties with shorter deadlines in retaliation for her filing of the EEOC retaliation complaint referred to above. Plaintiff then complained to her supervisor about these alleged unlawful practices in retaliation and the resulting effects these were having on her health to no avail.

28. The Plaintiff complained to her superiors, specifically Captain Marvin Ramsey, Professional Compliance/Internal Affairs Chief MaryAnn Puig, Captain Edwin Cambridge, Chief Manny Fernandez and Director Timothy P. Ryan, about the retaliation on or about the 6th day of August 2008. No corrective action was taken regarding this unlawful action. Rather than address these complaints by Plaintiff, the Defendant's supervisory employees ignored departmental procedures mandated by the MIAMI-DADE COUNTY C&R Departmental Operating Procedures Manual, ignored and eventually dismissed Plaintiff's concerns.

29. On or about 4th of August 2008 Plaintiff filed an additional complaint with the Office of Fair Employment Practices for additional discrimination and retaliation practices. Rather than address the Plaintiff's concerns, the Defendant served Plaintiff with additional discipline. No corrective action was taken regarding this unlawful action.

32. Any reason offered by the Defendant for any of the several severe disciplines rendered within a few weeks time, multiple disciplines served at once, is pretextual illusions with the actual purpose of retaliation against the Plaintiff because of the complaints of the unlawful conduct in the workplace prohibitive by federal, state, and local law.

## COUNT ONE
### RETALIATORY CONDUCT BY EMPLOYER.

33. Plaintiff restates paragraphs 1 through 32 inclusive and incorporates them as though fully set forth.

34. Each and every action taken by the Defendants regarding their disciplinary actions were in contravention of existing county policy by denying the Plaintiff any meaningful opportunity to exercise her rights under the County Personnel Rules to have a meaningful review of the disciplinary actions. This was done with the full knowledge that it was unlawful and in contravention of the established rules as a tool to harass and retaliate against the Plaintiff for exercising her rights to file complaints of unlawful activity by her employers, supervisors, and staff.

35. The Defendant's conduct was designed to single out the Plaintiff for harsher disciplinary treatment for minor offenses than other workers who had not exercised a right to complain about allegedly unlawful employment practices by the Defendant. The Defendant singled out the Plaintiff for increased scrutiny of her work load in an attempt to find minor flaws and discipline her accordingly. The Defendant fabricated incidents, conversations, or other such "infractions" of policy in an attempt to discipline the Plaintiff and/or terminate her employment with the Defendant. All these acts were done with the design of retaliating against the

Defendant solely because she availed herself of a legally protected right to complain about unlawful employment practices alleged to have been committed by the Defendant.

## PRAYER FOR RELIEF.

WHEREFORE, the PLAINTIFF, SUSAN ROOT, requests judgment against DEFENDANT MIAMI-DADE COUNTY, FLORIDA and respectfully requests that this Court grant the following:

(a) Declare the Conduct of the Defendant to violate the rights guaranteed to the Plaintiff by federal law as described more fully in this Complaint, and;

(b) Grant a permanent injunction restraining the Defendant, its officers, successors, assigns, employees, or supervisors, and all persons in active concert or participation with them from engaging in any employment practice which retaliates against an individual for complaining against an unlawful employment practice, and;

(c) Grant the Plaintiff a temporary injunction restraining the Defendant, its officers, successors, assigns, employees, or supervisors, and all persons in active concert or participation with them, requiring them to maintain the Plaintiff's job vacant and available for her to return to work at the conclusion of this lawsuit, and;

(d) Order Defendant to make whole the Plaintiff SUSAN ROOT by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices, and;

Page 14 of 15

(e) Order the Defendant to pay any lost wages to the Plaintiff as a result of the unlawful actions contained herein, and;

(f) Grant the Plaintiff actual, consequential, compensatory, liquidated, and all other such damages as the Court may deem appropriate against the Defendant to do justice to the parties, and;

(g) Grant the Plaintiff attorney's fees, costs, and expenses, including expert witness fees, and;

(h) Grant the Plaintiff all other such relief without limitation as the Court deems necessary to do justice to the parties.

<u>**JURY TRIAL DEMAND.**</u>

**The Plaintiff request a trial by jury on all such issues of fact and law raised by this Complaint for which the right is due.**

Dated: 03/02/08

Filed by:

William Pena Wells, Esq. FBN 759848
Attorney for Plaintiff SUSAN ROOT

William Pena Wells
Attorney at Law
Post Office Box 640911
North Miami Beach, FL  33164-0911
(305)-898-0243

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 510-2008-01634 |

| Florida Commission On Human Relations | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Ms. Susan O. Root** | **(305) 895-3778** | **01-09-1952** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1163 N.E. 109th Street, Miami, FL 33161** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **MIAMI DADE COUNTY CORRECTIONS** | **201 - 500** | **(786) 263-6010** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2525 N.W. 62nd Street,  Miami, FL 33147** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **01-23-2008** | **01-28-2008** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I.     I filed a charge of discrimination on June 15, 2007, with EEOC.  The EEOC charge number is 510-2007-04334, in retaliation for filing the charge, I suspended for 30 working days beginning on January 23, 2008.

II.    The reason given was that charging party violated the company's standard of conduct.

III.   I believe I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |

Jan 28, 2008     *(signature)*

SUBSCRIBED AND SWORN TO BEFORE ME TH...
*(month, day, year)*

**Exhibit A**

EEOC Form 161 (2/08)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Susan O. Root**<br>**1163 N.E. 109th Street**<br>**Miami, FL 33161** | From:  **Miami District Office**<br>**2 South Biscayne Blvd**<br>**Suite 2700**<br>**Miami, FL 33131** |

☐  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **510-2008-01634** | **Linda Byars,**<br>**Investigator** | **(305) 808-1816** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be** collectible.

On behalf of the Commission,

**Manuel Zurita,**
**Acting Director**

DEC 1 0 2008

*(Date Mailed)*

Enclosures(s)

cc:
**Eric A. Rodriguez**
**Assistant County Attorney**
**MIAMI-DADE COUNTY**
**Stephen P. Clark Center**
**111 N. W. 1st Street**
**Miami, FL 33128**

## Exhibit B

# WILLIAM P. WELLS

## ATTORNEY AT LAW
POST OFFICE BOX 640911
NORTH MIAMI BEACH, FL 33164-0911
(305)-898-0243

**FEBRUARY 20, 2009**

**Florida Department of Financial Services**
**200 East Gaines Street**
**Tallahassee, Fl 32399**
**(via Certified Mail, Ret. Rcpt. Req.**
**Article No.: 7008 1140 0003 7868 0113)**

**Re: Susan Root**
**Statutory Notice of Claim**
**F.S. Sec. 768.28**

**Mayor,**
**Miami-Dade County, Florida**
**Stephen P. Clark Center**
**111 NW 1st Street 29th Floor**
**Miami, Fl  33128**

**Timothy P. Ryan,**
**Director**
**Miami-Dade Corrections & Rehabilitation**
**Department Headquarters**
**2525 NW 62 Street**
**Miami, FL 33147**
**(via U.S. First Class Mail)**

**(via U.S. First Class Mail)**

**Dear Mayor, Director Ryan,**
**and Representative of the FDFS:**

    This letter serves as formal notification of a claim for damages, injunctive and compensatory relief, restitution of lost back pay, seniority, and other such relief as may be awarded by a Court of competent jurisdiction at law or equity regarding my client Ms. Susan Root for various violations of the Americans with Disabilities Act, ("ADA") and retaliatory employment practices outlawed by State and Federal law, as well as other common law causes of action arising from the Conduct of Ms. Root's employers, its staff, agents, or persons acting under its direction.

    Ms. Root is currently employed as an Administrative Secretary in the employment of Miami-Dade County, Florida at the TGK Correctional Facility at Miami Dade County, Florida. After filing several complaints regarding unethical and improper practices by the C & R Department, the Department, its Directory,officers, staff, and management employees within the scope of employment duties for Miami-Dade County, Florida are alleged to have retaliated against Ms. Root in providing her with increased discipline for infractions not otherwise provided to other employees similarly situated in a continuing and long-standing pattern of retaliation prohibited by law. The claim covers the actions complained of by Ms. Root to the EEOC for which she has a right to sue ( said claim is incorporated in this demand as though fully set forth herein)  as well as the state law claims for damages, intentional or negligent supervision, infliction of emotional distress, interference with employment relationship, and claims for lack of reasonable

Exhibit C

accommodation under the Americans with Disabilities Act and similar state and county law. Said conduct was approved and confirmed by Director Ryan as head of the C & R Department its agents, officers, and staff commencing after the reporting of lost badges by Ms. Root to her superiors and continuing to this day, with further harassment of Ms. Root by continued and repeated letters requiring her to return to her employment which are immediately rescinded as improper. These requirements to return to work do not address or provide any reasonable accommodation whatsoever under the prior ADA request.

Should you have any questions or comments, or otherwise require additional information, please do not hesitate to contact me promptly.

Thank you for your attention to this matter.

Sincerely,

WILLIAM PEnn

William Pena Wells, Esq.
Attorney at Law

cc:     Mr. Eric Rodriguez, Esq.
        Miami Dade County, Assistant County Attorney
        (via fax)



**Employee Relations Department**
Labor Management and
Employee Appeals Division
111 NW 1st Street • Suite 2140
Miami, Florida 33128-1907
T 305-375-4171 F 305-375-4138

**miamidade.gov**

ADA Coordination
Agenda Coordination
Art in Public Places
Audit and Management Services
Aviation
Building Code Compliance
Building
Business Development
Capital Improvements
Citizen's Independent Transportation Trust
Communications
Community Action Agency
Community & Economic Development
Community Relations
Consumer Services
Corrections & Rehabilitation
Countywide Healthcare Planning
Cultural Affairs
Elections
Emergency Management
**Employee Relations**
Enterprise Technology Services
Environmental Resources Management
Fair Employment Practices
Finance
Fire Rescue
General Services Administration
Historic Preservation
Homeless Trust
Housing Agency
Housing Finance Authority
Human Services
Independent Review Panel
International Trade Consortium
Juvenile Assessment Center
Medical Examiner
Metropolitan Planning Organization
Park and Recreation
Planning and Zoning
Police
Procurement Management
Property Appraiser
Public Library System
Public Works
Safe Neighborhood Parks
Seaport
Solid Waste Management
Strategic Business Management
Team Metro
Transit
Urban Revitalization Task Force
Vizcaya Museum and Gardens
Water and Sewer

August 14, 2007

Ms. Susan Root
1163 NE 109th Street
Miami, Florida 33161

Re:  Request for Appeal

Dear Ms. Root:

I have received and reviewed your memorandum of August 14, 2007, in part requesting an appeal of DAR #07-083, a five-day suspension. Section 2-47 of the Miami-Dade County Code provides for the right of a permanent status employee to an appeal of disciplinary action. Our records indicate that you are in an exempt status. As an exempt employee, you do not have a right to appeal a suspension. Accordingly, your appeal request must be denied.

In regard to the other issues raised in your memorandum, Administrative Order 7-3 specifies that DAR's be presented to employees prior to any penalty recommendation. This is to afford an opportunity to the employee to respond to the charges before a penalty is recommended by the employee's supervisor. While Administrative Order 7-3 does not apply to exempt employees, departments usually follow the procedures outlined therein when the department chooses to present a DAR to an exempt employee, although this too is not required. The documents attached to your memorandum indicate that the department followed the normal process although not required to do so.

Should you have further questions concerning these issues, you may contact me at (305) 375-4171.

Sincerely,

Mark L. Deutsch
Senior Labor Management Specialist
Labor Management Division, Human Resources

cc:   Timothy Ryan, Director, Corrections & Rehabilitation Department
      Corinne Brody, Interim Director, Human Resources
      Donald S. Allen, Director, Labor Management Division, Human Resources
      Terry Browne, Corrections Personnel Bureau Commander

**Exhibit D**



**MIAMI-DADE COUNTY**

Carlos Alvarez, Mayor

**Human Resources**
Labor Management and
Employee Appeals Division
111 NW 1st Street • Suite 2140
Miami, Florida 33128-1907
T 305-375-4171 F 305-375-4138

miamidade.gov

February 11, 2008

Ms. Susan Root
1163 NE 109th Street
Miami, Florida 33161

RE:  Request for Appeal – Thirty (30) Day Suspension

Dear Ms. Root:

The Director of Human Resources has received your request for an appeal hearing. This appeal has been forwarded to the Labor Management Division for review and response.

According to our records, you are an exempt status employee for the Corrections and Rehabilitation Department.  Please be advised that Section 2-47 of the Miami-Dade County Code, Administrative Order 7-3, and the applicable section of the Collective Bargaining Agreement allow for a permanent status employee to appeal a disciplinary action.  As an exempt status employee, you are not eligible to avail yourself of this appeal process.  Accordingly, your request for an appeal is respectfully denied.

If you have any further questions, please contact me at 305-375-4171.

Sincerely,

Jose D. Fraguela
Senior Labor Management Specialist
Labor Management Division, Human Resources

JDF/vo

cc:  Timothy Ryan, Director, Corrections and Rehabilitation Department
Angela Maher, Director, Human Resources Department
Donald S. Allen, Director, Labor Management Division, Human Resources
Terry Browne, Corrections Bureau Commander
Karen Jordan, Corrections Lieutenant

*Delivering Excellence Every Day*

LMEAD# 23371

# METROPOLITAN DADE COUNTY
## *EMPLOYEE PERFORMANCE EVALUATION*
### (INSTRUCTIONS ON BACK OF SECOND PAGE)

## THREE MONTH REEVALUATION/ TRANSFER EVALUATION

| Name        (Last) | (First) | (Initial) | Period Covered | | |
|---|---|---|---|---|---|
| Root | Susan | | From  05/02/07<br>Mo Day Yr | To  08/02/07<br>Mo Day Yr | |

| Classification | Status | If Prob. Date Ends | Social Security Number |
|---|---|---|---|
| ADMIN SECRETARY | PERF RPT ONLY | EXEMPT | 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 |

| Department | Division | Unit |
|---|---|---|
| Corrections & Rehab Dept | ADMINISTRATION DIVISION | TRAINING BUREAU |

**Reason For Review**

☑  ☐Merit Raise   ☐Status Change   ☑Annual Review   ☐**Other   ☐Due Back to Personnel Section by _____

Raters: It is understood that the importance of each category will vary with job classification and department. Explain your rating in terms of performance in each category. Mark the appropriate box. Use additional sheets if necessary.

---

**1.    QUANTITY OF WORK: Includes amount of work performed.**

Rating:   Unsatisfactory   Needs Improvement   ☒ Satisfactory   Above Satisfactory   Outstanding

Explain Why:  **This performance evaluation covers a three month period. During this three month period, Ms. Root was given a specific plan of action to improve her job performance in two areas:  work habits and interpersonal skills.**
From May 2, 2007 through June 27, 2007, Ms. Root continued to perform clerical duties and provide clerical support in the Training Bureau.  Her duties included typing, creating documents, copying, faxing, filing, preparing purchase requests, ordering, distributing, and collecting badges, answering phones and assisting employees and visitors. Ms. Root performed these tasks in a satisfactory manner.

---

**2.    QUALITY OF WORK:** Includes accuracy, achievement of objectives; effectiveness, initiative and resourcefulness and, neatness of work product.

Rating:   Unsatisfactory   Needs Improvement   ☒ Satisfactory   Above Satisfactory   Outstanding

Explain Why:   Ms. Root was able to continue to achieve the objectives of her position.  Her work product continued to be neat.  During the three month period, Ms. Root assisted employees, staff, and the public with their needs, and answered their inquiries.  Ms. Root conducted a reconciliation of all badges, and was able to account for all of them. She provided a report.

---

**3.    WORK HABITS:** Includes attendance, observance of work hours, completion of work on schedule, compliance with rules, policies, and directives, safety practice and use of tools and equipment.

Rating:   Unsatisfactory   Needs Improvement   ☒ Satisfactory   Above Satisfactory   Outstanding

Explain Why:  Ms. Root's punctuality showed a marked improvement during the rating period.  She was only late one day.  CONTINUED

---

**4.    INTERPERSONAL SKILLS:** Includes participation and teamwork; contribution to unit morale; working cooperatively with the public, peers, and subordinates; and accepting advice and counseling from superiors.

Rating:   Unsatisfactory   ☒ Needs Improvement   Satisfactory   Above Satisfactory   Outstanding

Explain Why:   Ms. Root needs to make a concerted effort to improve in this category.  Continued...

108.01-6 2/92

Exhibit E

**RATER'S OVERALL EVALUATION -** Only one rating factor to be checked.

| | | |
|---|---|---|
| | **Unsatisfactory:** | Performance is inadequate and must be corrected. |
| | **Needs Improvement:** | Performance does not fully meet job requirements as indicated below. |
| X | **Satisfactory:** | Employee is performing as required and expected in a satisfactory manner. |
| | **Above Satisfactory:** | Performance surpasses job requirements. |
| | **Outstanding:** | Consistently conspicuous, distinguished performance.  Employee displays initiative and creativity.   Employee has substantially enhanced departmental efficiency and/or effectiveness. |

If an employee is eligible for merit increase, check following:  ❑ Granted  ❑ Deferred, reevaluate in _____ month

If an employee is eligible for permanent status, check following:  ❑ Granted  ❑ Denied  ❑ Extended _____ months

with the Employee's written permission.  (Attached) (Probationary period may not extend beyond one year.)

**WAYS THE EMPLOYEE CAN OR MUST IMPROVE PERFORMANCE:**  (If overall rating is Needs Improvement or Unsatisfactory, a written plan of action for improvement must be included in this section.  Optional if Satisfactory or better).

See attached page.

This report is based on my observations, knowledge of employee's performance and review of applicable information.   It represents my best judgment of the employee's performance.

**RATER'S SIGNATURE** _____  **DATE** 8/24/07

**PRINT NAME** Myriam Kovacs  **TITLE** Commander

I have reviewed this report and discussed it with the rater.  It represents an accurate appraisal of the employee's performance in accordance with Administrative Order.  I concur in the recommendation, if any, as to merit raise and/or permanent status.

**REVIEWER'S SIGNATURE** _____  **DATE** 8-24-07

**PRINT NAME** Denise Bendross  **TITLE** Chief

I acknowledge that I have received a copy of this evaluation.  I have had an opportunity to discuss it  with my supervisor.  In signing this evaluation, I do not necessarily agree with the conclusions.  I understand that I may write my comments below or on another sheet of paper.

A permanent  employee  who has received an overall evaluation of "Unsatisfactory" or "Needs Improvement," must first request a review of the Performance Evaluation by the Department Director within ten (10) calendar days.  If the decision of the Director is not acceptable to  the employee, the employee may continue the appeal within ten (10) calendar days after receipt of the Director's decision by making a request in writing to the Personnel Division Director, of the Employee Relations Department.

I have read and understand the above appeal process.

**EMPLOYEE COMMENTS:**  See attached Rebuttal

**EMPLOYEE'S SIGNATURE** Refused to Sign  **DATE** 9/21/07

108.01-6A 2/92

Distribution: White copy to employee  -  Green copy to Personnel  -  Yellow copy to departmental personnel office  -  Blue copy to Reviewer.

**Administrative Secretary Root, Susan Performance Evaluation 05/02/07 - 06/28/07**

**PAGE 3**
**EVALUATION (CONTINUED)**

**WORK HABITS:** (continued)

Ms. Root was requested to provide a written explanation as to why she was late arriving at work on one occasion. She provided the requested information. In addition, Ms. Root was asked to have someone relieve her at the reception desk whenever she had to step away, or when she went to lunch, Although she complied, she stated her dissatisfaction with this decision. During this three month rating period Ms. Root showed improvement in reducing her personal calls.

INTERPERSONAL SKILLS: (continued)

Ms. Root demonstrated no improvement during this rating period regarding her interpersonal skills. On June 18, 2007 she had a dispute with an individual who came in to fix the time clock. Ms. Root's behavior was unprofessional and unacceptable. As a result, she was issued a Disciplinary Action Report. During this same time frame, Ms. Root received a second Disciplinary Action Report for violating her chain of command. Ms. Root was transferred out of the Training Bureau effective June 28, 2007.

**WAYS EMPLOYEE CAN OR MUST IMPROVE PERFORMANCE:**

In the previous performance evaluation, Ms. Root was issued a plan of action requiring her to attend three training courses to enhance her skills in the areas of customer service and communication, time management, and stress management. Ms. Root was scheduled for the classes by me. She requested to be permitted to postpone attending one course, and was subsequently rescheduled. Another course was canceled, but it was also rescheduled. Prior to the date of the course, I sent Ms. Root's new supervisor an e-mail informing him that she was scheduled for the class. Ms. Root sent an e-mail to the Human Resources Department advising that she had a new supervisor, and that she would not be attending because she had taken the course in-house and she also had a heavy workload. Attached is a copy of Ms. Root's Training History with MDCR. There is no indication that she has attended the Customer Service and Communication course in house. She attended a Service Excellence class.

Ms. Root needs to stop using Miami-Dade County equipment (telephone) to conduct her private business. She needs to immediately cease making any type of personal calls to her business during working hours.

Ms. Root needs to make an immediate improvement in her interpersonal skills. Throughout her tenure in Miami Dade Corrections and Rehabilitation Department, she has has been counseled repeatedly regarding her need to improve in this area. It is recommended that Ms. Root receive training in anger management and communications skills in order to learn techniques that will assist her in dealing with stressful situations.

**Kovacs, Myriam (MDCR)**

**From:** Neuman, Delores (HR)
**Sent:** Friday, August 17, 2007 3:18 PM
**To:** Kovacs, Myriam (MDCR)
**Subject:** FW: Time Management Skills

This e-mail refers to the Time Management class.

**From:** Neuman, Delores (ERD)
**Sent:** Monday, July 09, 2007 10:28 AM
**To:** Singh, Jasvinder (MDT)
**Subject:** RE: Time Management Skills

Thank you, I dropped you from the Time Management Skills class but unfortunately this was the only class for this quarter. Please check back with us in late September for the 4th quarterly classes.

**From:** Singh, Jasvinder (MDT)
**Sent:** Monday, July 09, 2007 10:10 AM
**To:** Neuman, Delores (ERD)
**Subject:** RE: Time Management Skills

I will not be able to attend this class on 7/11.
Thanks

**From:** Neuman, Delores (ERD)
**Sent:** Friday, June 29, 2007 4:49 PM
**To:** Nieves, Evelyn (FIN); Gilmore, Candace; Vellon, Maria (MDT); Ogletree, Carolyn (SWM); Villamil, Humberto (Elections); Kelly-Brown, Ruth (Seaport); Austin, Tracey (FIN); Singh, Jasvinder (MDT); Root, Susan (MDCR)
**Cc:** Garcia, Jorge A. (COC); Bevans, Alda (FIN); Wright, Letresia (MDT)
**Subject:** FW: Time Management Skills

Last month you signed up for a Time Management Skills class and we had to cancel that class. If you are still interested in attending the Time Management Skills class we are offering this on Wednesday, July 11th, 2007 from 1:00 p.m. to 4:30 p.m. at 111 N.W. 1st Street, Room 18-B. Please just send me an e-mail and cc: your supervisor requesting to attend on July 11th.

**Clerk of Courts**
(Jorge, please check with Diane Richardson she was interested in taking this class.) Thanks.

Thank you,

Delores Neuman, Clerk IV
Career Development Division
*Miami-Dade Employee Relations Department*
111 N.W. 1 Street Suite 2110
Miami, Florida 33128
Office (305) 375-3713 Fax (305) 375-3063
www.miamidade.gov/emprel

8/22/2007

**Kovacs, Myriam (MDCR)**

| | |
|---|---|
| **From:** | Neuman, Delores (HR) |
| **Sent:** | Friday, August 17, 2007 3:13 PM |
| **To:** | Kovacs, Myriam (MDCR) |
| **Subject:** | RE: Courses scheduled for Ms. Susan Root |

I do not show that she attended any of the classes below.    I'm checking my e-mails for any response that she may have sent to me.  I will send you copies of the e-mails that I received from Susan.

CSCN - Customer Service -   scheduled for May 4/07

TMSN - Time Management Skills   - scheduled for June 14/07/Class Cancelled due to lack of participants

STMN - Stress Management Skills – scheduled for June 1/07/Class Cancelled due to lack of participants

---

**From:** Kovacs, Myriam (MDCR)
**Sent:** Friday, August 17, 2007 2:46 PM
**To:** Neuman, Delores (HR)
**Subject:** Courses scheduled for Ms. Susan Root

Good afternoon Ms. Neuman

I'm writing to inquire whether Ms. Susan Root attended the below listed courses which I had scheduled her for?  I realize that she asked to be re-scheduled a couple of times. I also believe one class date was changed by your staff.

I just wanted to follow up and see if either she did attend, or she requested an alternate date.  The classes are:

CSCN - Customer Service -   scheduled for May 4/07

TMSN - Time Management Skills   - scheduled for June 14/07

STMN - Stress Management Skills – scheduled for June 1/07

Thanks for your assistance.

Thank you,

Delores Neuman, Clerk IV
Career Development Division
Miami-Dade Employee Relations Department
111 N.W. 1 Street Suite 2110
Miami, Florida  33128
Office (305) 375-3713  Fax (305) 375-3063
www.miamidade.gov/emprel
"Delivering Excellence Every Day"

**Kovacs, Myriam (MDCR)**

| | |
|---|---|
| **From:** | Neuman, Delores (HR) |
| **Sent:** | Friday, August 17, 2007 3:17 PM |
| **To:** | Kovacs, Myriam (MDCR) |
| **Subject:** | FW: Reminder-Customer Service and Communication-July 25, 2007 |

This is one e-mail that I received from Susan on the Customer Service class. The other CSCN class was cancelled in June and she cancelled for July.

---

**From:** Neuman, Delores (ERD)
**Sent:** Thursday, July 19, 2007 3:16 PM
**To:** Root, Susan (MDCR)
**Cc:** Ramsey, Marvin (MDCR)
**Subject:** RE: Reminder-Customer Service and Communication-July 25, 2007

Thank you, I have deleted you from the Customer Service and Communication class.

---

**From:** Root, Susan (MDCR)
**Sent:** Thursday, July 19, 2007 3:05 PM
**To:** Neuman, Delores (ERD)
**Cc:** Ramsey, Marvin (MDCR)
**Subject:** RE: Reminder-Customer Service and Communication-July 25, 2007

I have a new supervisor, Captain Marvin Ramsey. I have previously taken this course in-house, and my new assignment requires me on duty because of heavy workloads. Therefore, I would appreciate you canceling my enrollment for this class at this time, per Captain Ramsey's approval.

---

**From:** Neuman, Delores (ERD)
**Sent:** Thursday, July 19, 2007 11:50 AM
**To:** Brandtner, Mariella (FIN); Jerome, Linda (MDFR); Kelly-Brown, Ruth (Seaport); Perez-Bertot, Elida (COC); Ridgard-Duncker, Jennifer (CAA); Rodriguez, Patricia (MDPD); Roman, Matilde (COC); Root, Susan (MDCR); 'knunez@palmettobay-fl.gov'; Burba, Roma (MDFR)
**Cc:** Valdes, Reinaldo (ERD); 'Danielle Linton-Hunter'; Garcia, Jorge A. (COC); Fisher, Dorothy (COC); Diaz, Michelle (COC); Torrens, Luis M. (CAA); Donaldson, Judy (COC); Salvi, Irene (MDFR); Muniz, Michelle (FIN); Bevans, Alda (FIN); Braswell, Eric (Seaport); Lewis, Janet L. (MDPD)
**Subject:** Reminder-Customer Service and Communication-July 25, 2007

Just a friendly reminder that you are scheduled for the following class:

## Customer Service and Communication (CSCN)
### Wednesday, July 25, 2007
### Time:  1:00 p.m. to 5:00 p.m.
### Location:  111 N.W. 1st Street
### 18th Floor – Room 18-B

Library-Danielle please inform the following employees-Narkeya Jenkins, and Jewel Laster.
Clerk of Courts-Jorge please remind Pamela Garmon, Sandra Pierre Louis, Diane Richarson, Carlos Saboya, and Eda Thomas
(I have room available if you would like to send additional employees)

VALUING CULTURAL DIVERSITY – VCDN

Thursday      July 12        1:00 p.m. – 4:30 p.m.

VIOLENCE IN THE WORKPLACE – VIWN

Thursday      September 20   1:00 p.m. – 4:30 p.m.

---

**From:** Diaz, Marcela (ERD)
**Sent:** Wednesday, June 06, 2007 10:24 AM
**To:** Brandtner, Mariella (FIN); Burba, Roma (MDFR); Fisher, Dorothy (COC); Diaz, Michelle (COC); Roman, Matilde (COC); Gilmore, Candace; Ridgard-Duncker, Jennifer (CAA); Perez-Bertot, Elida (COC); Jerome, Linda (MDFR); Kelly-Brown, Ruth (Seaport); knunez@palmettobay-fl.gov; Root, Susan (MDCR)
**Cc:** Muniz, Michelle (FIN); Salvi, Irene (MDFR); Donaldson, Judy (COC); Garcia, Jorge A. (COC); Charles, Kathy (BCCO); Torrens, Luis M. (CAA); Braswell, Eric (Seaport); Kovacs, Myriam (MDCR); Brooks, David (MDCR); Granville, Myrna (MDCR); Bevans, Alda (FIN)
**Subject:** Class Cancelled – Customer Service and Communication (CSCN) - June 7, 2007
**Importance:** High

## The following class has been <u>cancelled</u>:

## Customer Service and Communication (CSCN)
## Tomorrow ➔ Thursday, June 7, 2007

You've been rescheduled for our next offering ➔ CSCN 7/25/07
From 1:00 p.m. to 4:30 p.m.  (room: 18-3)

---

**Clerk of Courts:** Dorothy and Michelle please inform:
Pamela Garmon  -  Diane Richardson  -  Sandra Pierre-Louis  -  Carlos Saboya and Thomas Martinez

---

Thank you,

**Marcela Diaz, Clerk 4**
**Miami-Dade County - Employee Relations Department**
**111 NW 1 Street, 21st Floor**
**Miami, Florida 33128**
**Phone ☎(305) 375-5654  or 305-375-2473**

**Fax 🖶(305) 375-3063**
*"Delivering Excellence Every Day"*

*Visit our website www.miamidade.gov/emprel*

Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure. All E-mail sent and received is captured by our servers and kept as a public record.

**Kovacs, Myriam (MDCR)**

| | |
|---|---|
| **From:** | Diaz, Marcela (ERD) |
| **Sent:** | Friday, May 04, 2007 1:14 PM |
| **To:** | Kovacs, Myriam (MDCR) |
| **Cc:** | Bendross, Denise (MDCR); Root, Susan (MDCR); Neuman, Delores (ERD) |
| **Subject:** | RE: Re-schedule Customer Service & Communication class for Susan Root |

Susan has been removed from today's roster – this is her updated schedule:



### MIAMI-DADE COUNTY UNIVERSITY
#### STUDENT SCHEDULE

**ROOT SUSAN**
5/4/2007

| | | | SSNO ***-**-4162 CERTIF: | TIME | ROOM |
|---|---|---|---|---|---|
| **Electives** | | | | | |
| 6/1/2007 | STMN | STRESS MANAGEMENT | | 01:00 - 04:30 | *18-A |
| | | 111 N.W. 1st Street SPCC Bldg 18 floor, room18-A | | | |
| 6/7/2007 | CSCN | CUSTOMER SERVICE AND COMMUNICATION | | 01:00 - 04:30 | *18-A |
| | | 111 N.W. 1st Street SPCC Bldg 18 floor, room18-A | | | |
| 6/14/2007 | TMSN | TIME MANAGEMENT SKILLS | | 08:30 - 12:00 | *18-4 |
| | | 111 N.W. 1st Street SPCC Bldg 18 floor, room18-4 | | | |



**Marcela Diaz, Clerk 4**
**Miami-Dade County - Employee Relations Department**
**111 NW 1 Street, 21st Floor**
**Miami, Florida 33128**

8/22/2007

Phone '(305) 375-5654  or 305-375-2473
Fax    7(305) 375-3063
*"Delivering Excellence Every Day"*

*Visit our website www.miamidade.gov/emprel*

Miami-Dade County is a public entity subject to Chapter 119 of the Florida Statutes concerning public records. E-mail messages are covered under such laws and thus subject to disclosure. All E-mail sent and received is captured by our servers and kept as a public record.

---

**From:** Kovacs, Myriam (MDCR)
**Sent:** Friday, May 04, 2007 12:24 PM
**To:** Neuman, Delores (ERD); Diaz, Marcela (ERD)
**Cc:** Bendross, Denise (MDCR); Root, Susan (MDCR)
**Subject:** Re-schedule Customer Service & Communication class for Susan Root

Good afternoon

Please re-schedule Ms. Susan Root for the above mentioned class to Thursday, June 7, 2007.  She will not be able to attend this afternoon.  Thank you for your assistance.

8/22/2007

# Miami-Dade Corrections & Rehabilitation Department
## Employee Training History

| SS# | First Name | Last Name | Badge# | Race | Sex | Course Title | Course ID | Status | Hours | Course Date | Completed Date |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 262-94-94-4162 | Susan | Root | | A | F | Preventing Crime In Black Community | CONF | NA | 24 | 5/30/2007 | 6/1/2007 |
| | | | | | | Microsoft Powerpoint, Basic | CR | NA | 8 | 1/18/2007 | 1/18/2007 |
| | | | | | | Election Specialist Training | MDC | NA | 3 | 12/6/2006 | 12/6/2006 |
| | | | | | | Ethics V | WB | P1 | 4 | 12/1/2006 | 12/1/2006 |
| | | | | | | Election Specialist Training | MDC | NA | 3 | 9/22/2006 | 9/22/2006 |
| | | | | | | Election Specialist Open Review | MDC | NA | 6 | 8/28/2006 | 9/1/2006 |
| | | | | | | Preventing Crime In The Black Communit | OAG | NA | 17 | 6/1/2006 | 6/4/2005 |
| | | | | | | Community Supervision/Internet Broadca | CR | NA | 3 | 3/16/2005 | 3/16/2005 |
| | | | | | | Fire Evacuation & Prevention | CR | NA | 1 | 2/7/2005 | 2/7/2005 |
| | | | | | | PAR Training | CR | NA | 4 | 12/13/2004 | 12/13/2004 |
| | | | | | | Service Excellence | CR | NA | 4 | 6/23/2004 | 6/23/2004 |
| | | | | | | NIC Staff Wellness Internet Conference | CR | NA | 3 | 6/16/2004 | 6/16/2004 |
| | | | | | | CORESTAT Prep. Manual | CR | NA | 6 | 6/2/2004 | 6/2/2004 |
| | | | | | | Black Family Symposium | BARRY U | NA | 8 | 5/14/2004 | 5/14/2004 |
| | | | | | | PAR Training | CR | NA | 4 | 2/24/2004 | 2/24/2004 |
| | | | | | | Civilian Applicant Recruitment & Selection | CR | NA | 8 | 2/3/2004 | 2/5/2004 |
| | | | | | | Strategic Planning Training | CR | NA | 8 | 10/2/2003 | 10/2/2003 |
| | | | | | | Prevent Crime Black Community | Seminar | NA | 17 | 5/21/2003 | 5/24/2003 |
| | | | | | | CORESTAT Data Collection Notebook | CR | NA | 8 | 2/25/2003 | 2/25/2003 |
| | | | | | | Microsoft Outlook 2000 Basic/ Advanced | CR | NA | 16 | 2/26/2002 | 2/28/2002 |
| | | | | | | Kingian Nonviolence | CR | NA | 32 | 5/7/2001 | 5/10/2001 |
| | | | | | | Ethics - Session 1,2,3,4 | CR | NA | 4 | 3/31/1999 | 3/31/1999 |
| | | | | | | Time & Project Management | Managem | NA | 16 | 3/30/1999 | 3/31/1999 |

Page 1

## Miami-Dade Corrections & Rehabilitation Department
## Employee Training History

| SS# | First Name | Last Name | Badge# | Race | Sex | Course Title | Course ID | Status | Hours | Course Date | Completed Date |
|-----|-----------|-----------|--------|------|-----|--------------|-----------|--------|-------|-------------|----------------|
| | | | | | | Diversity 99 Conference | Managem | NA | 8 | 1/14/1999 | 1/14/1999 |
| | | | | | | Excellence in the Workplace | MDPD | NA | 16 | 10/6/1998 | 10/7/1998 |
| | | | | | | 13th Nat.Conf. Prev. Crime Blk Com | Mngmt. S | NA | 24 | 5/27/1998 | 5/29/1998 |
| | | | | | | National Conference On Crime Prevention | Mngmt. S | NA | 24 | 10/13/1997 | 10/15/1997 |
| | | | | | | ADA | CR | NA | 3 | 6/27/1997 | 6/27/1997 |
| | | | | | | 11th Nat. Conf. Prev. Crime Blk Com | Mngmt. S | NA | 24 | 5/29/1996 | 6/1/1996 |
| | | | | | | 10th Nat. Conf. Prev. Crime Blk Com | Mngmt Se | NA | 24 | 4/26/1995 | 4/29/1995 |
| | | | | | | Bloodborne Pathogens | CR | NA | 4 | 6/8/1994 | 6/8/1994 |

Susan Root                         REBUTTAL TO REEVALUATION/TRANSFER EVALUATION
PAGE 1 of 2                                      SERVED 9/21/07

**WORK HABITS:**

I would think that if I was only three minutes late on one day in a three month period
from 5/2/07 to 8/2/07, I would receive a little more than a "Satisfactory" rating. As a
reminder, on May 10, 2007, at your instructions, Lieutenant McMullen, made me write a
memo as to why I was three minutes late (see attached e-mail).

There is no other Administrative Secretary in this department that is required to get
someone to sit in her chair when she "steps away" to go to the ladies' room.

**INTERPERSONAL SKILLS:**

Commander Myriam Kovacs has made it a personal campaign to discredit my excellent
work performance and character for Miami Dade County. In the previous evaluation, just
a year earlier, Commander Kovacs rated me as an "Outstanding" employee. When I
complained about the lack of proper direction given to me to do my job, she increased her
retaliation against me. This was followed up by the negative evaluation she wrote.

When I wrote my rebuttal to the "Needs Improvement" employee evaluation which was
erroneous, I spelled out the false accusations in that evaluation. She retaliated even more
with three DARs. Two of the DARs were served on July 6, 2007, after I was reassigned
as Administrative Secretary to the captain of the Turner Guilford Knight Correctional
Center. The third DAR was written and assigned a number, but apparently someone
stopped her from serving it. Commander Kovacs wrote three erroneous DARs in less
than a month and she recommends "training in anger management" for me. Hmmm?

You have to ask yourself, why is she intended on retaliation of a former subordinate? If
that is not enough, Commander Kovacs, herself, postponed the customer service class
scheduled for May 4, 2007.

**WAYS EMPLOYEE CAN OR MUST IMPROVE PERFORMANCE:**

My new supervisor approves of my demeanor and customer service skills. The "Service
Excellence" class was a "Customer Service" class. It makes one wonder, what else a
"Service Excellence" class would be?

Commander Kovacs continues to make accusations against me in writing, but provides
no backup documentation to support what she writes. I have worked cooperatively before
with Captain Marvin Ramsey. He has known me for many years. He did not feel I
needed the classes, and I received his approval before cancelling any class.

*attachment*                                           *Susan Root*

From:            Root, Susan (MDCR)
Sent:            Thursday, May 10, 2007 9:15 AM
To:              Kovacs, Myriam (MDCR)
Cc:              McMullen, Wanda (MDCR)
Subject:         Memo regarding my late arrival.

Attachments:     REQUESTED MEMO.pdf


It was three minutes from the time I parked, and could get out of my car, and could pick up my briefcase, and cross the busy street. I had already read Commander Kovacs' note, and was already sitting at my desk when Lieutenant McMullen came from within her office, stamped the blank memo sheet, and threw it on the counter in front of my face.   The memo attached is in your in-box as you requested.



REQUESTED
MEMO.pdf (24 KB)


**Susan Root**, Administrative Secretary
**Miami-Dade Corrections & Rehabilitation Department**
2525 NW 62 Street, Miami, Florida 33147
Office # 786-263-5950
 ax # 786-263-6188
<http://www.miamidade.gov/corrections>
"Delivering Excellence Every Day"

Exhibit F

## MIAMI-DADE COUNTY
## *EMPLOYEE PERFORMANCE EVALUATION*

| ...e          (LAST) | (FIRST) | (INITIAL) | Period Covered |
|---|---|---|---|
| **ROOT** | **SUSAN** | **A.** | From 02/12/2007 To 02/10//2008 |
|  |  |  | Mo.  Day Yr.      Mo.  Day Yr. |

| Classification | Status | If Prob. Date Ends | Employee Number |
|---|---|---|---|
| ADMIN. SECRETARY |  |  | 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 |

| Department | Division | Unit |
|---|---|---|
| CORRECT. & REHAB. | EAST OPERATIONS | TGKCC |

REASON FOR REVIEW

☐ Merit Raise    ☐ Status Change    ☐ Annual Review    ☐ Other    ☐ Due Back to Personnel Section by _____

Raters:  It is understood that the importance of each category will vary with job classification and department. Explain your rating in terms of performance in each category.  Mark the appropriate box.  Use additional sheets if necessary.

**QUANTITY OF WORK:** Includes amount of work performed.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☐ Satisfactory    ☑ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root has been assigned as the Administrative Secretary at the Turner Guilford Knight Correctional Center, for the majority of this rating period.  The work load for this position is tremendous.  Mrs. Root manages to perform at an expected level and maintains order, as it relates to daily priorities.  Mrs. Root is responsible for completing assignments given to her by the facility supervisor and assisting in the day-to-day delivery of services.  Mrs. Root completes these assignments in a timely manner.  Often, she remains after hours to ensure that specific deadlines are met.     **Cont'd**

`ALITY OF WORK:** Includes accuracy, achievement of objectives, effectiveness, initiative and resourcefulness and, .atness of work product.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☐ Satisfactory    ☑ Above Satisfactory    ☐ Outstanding

Explain Why:  Mrs. Root produces a neat work product and she takes great pride in the work she does.  Spelling and grammar are some of her strong assets and she willingly assists others in the office with these much appreciated skills.  Mrs. Root has approximately twenty-seven years of clerical experience and she harbors a wealth of knowledge that she refers to when needing additional resources.  Mrs. Root does not hesitate to inform her supervisor about issues and concerns.  This initiative carries over to her being able to resolve issues as they arise, which eliminates the disruption of services.

**WORK HABITS:**  Includes attendance, observance of work hours, completion of work on schedule, compliance with rules, policies, and directives, safety practice and use of tools and equipment.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☑ Satisfactory    ☐ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root continues to practice safety measures, relative to her current assignment.  She observes her assigned work hours and has used very little sick time during this rating period.  She completes work on schedule and complies with rules that pertain to her everyday administrative duties. She schedules her leave time responsibly, keeping her absence from having a severe impact on the overall operation of the facility. The tools of her trade are computers and other office machinery; she has no issues with the use of them. During this rating period, Mrs. Root served a thirty (30) day suspension for violating the chain of command (DAR #D07-084). Mrs. Root attended an anger management course as a result of DAR #D07-084.

**INTERPERSONAL SKILLS:**  Includes participation and teamwork; contribution to unit morale; working cooperatively with the public, peers, and subordinates; and accepting advice and counseling from superiors.

RATING:  ☐ Unsatisfactory    ☑ Needs Improvement    ☐ Satisfactory    ☐ Above Satisfactory    ☐ Outstanding

Explain Why:  Mrs. Root has good interpersonal skills and utilizes them during the performance of her duties. However, her .atience sometimes leads to minor disagreements between her and others. Some of these confrontations could be avoided. .th her many years of experience, Mrs. Root should know how to agree or disagree without the results becoming an issue that stifles her rapport with others.  Although not all confrontations were initiated by her, her responses did not improve the situations.  During this rating period, Mrs. Root served a five (5) day suspension for being discourteous and insubordinate (DAR #D07-083).     **Cont'd**

Root, Susan
Employee Performance Evaluation
02/12/2007 to 02/10/2008
   ge 2 of 2

## 1. QUANTITY OF WORK:

Mrs. Root has many years of experience with Miami-Dade County.  She is responsible for implementing a filing system that makes locating items a simple task.

## 4. INTERPERSONAL SKILLS

Nevertheless, I have witnessed Mrs. Root go beyond the call of duty to assist the general public, with the results being beneficial to all.. Mrs. Root does seek advice, on occasion. However, when given constructive criticism, she remains rigid and she does not willingly accept it for her betterment.  She should strive to accept advice with an open mind.

RATER'S OVERALL EVALUATION --- Only one rating factor to be checked.

| | | |
|---|---|---|
| Unsatisfactory: | Performance is inadequate and must be corrected. |
| Needs Improvement: | Performance does not fully meet job requirements as indicated below. |
| ☑ Satisfactory: | Employee is performing as required and expected in a satisfactory manner. |
| Above Satisfactory: | Performance surpasses job requirements. |
| Outstanding: | Consistently conspicuous, distinguished performance. Employee displays initiative and creativity. Employee has substantially enhanced departmental efficiency and/or effectiveness. |

an employee is eligible for merit increase, check following:  ☐ Granted   ☐ Deferred, reevaluate in _____months.

an employee is eligible for permanent status, check following:   ☐ Granted   ☐ Denied   ☐ Extended _____ months
ith the Employee's written permission.  (Attached)  (Probationary period may not extend beyond one year.)

**WAYS THE EMPLOYEE CAN OR MUST IMPROVE PERFORMANCE:**(If overall rating is Needs Improvement or Unsatisfactory, a written plan of action for improvement must be included in this section.  Optional if Satisfactory or better).

Mrs. Root must realize that her continued participation in self-help courses, whether by Department mandate, or choosing to go on her own, will no doubt refresh skills that she already possesses in her repertoire.  She should seek to make her recent and past indifferences with former supervisors a thing of the past.  Her current work assignment requires that she remain focused on the duties at hand and not allow her past to hinder her current performance.  She should strive to become better not bitter.  As a member of the Miami-Dade Corrections Department, Mrs. Root is expected to continue to request training as the opportunities arise.

eport is based on my observations, knowledge of employee's performance and review of applicable information.  It represents my best _ment of the employee's performance.

RATER'S SIGNATURE _____   DATE  7-2-08

rint Name _____ Marvin Ramsey _____   TITLE  Correctional Captain

ave reviewed this report and discussed it with the rater. It represents an accurate appraisal of the employee's performance in accordance th Administrative Order.  I concur in the recommendation, if any, as to merit raise and/or permanent status.

REVIEWER'S SIGNATURE _____   DATE  7-9-08

rint Name _____ Manny Fernandez _____   TITLE   Correctional Chief

acknowledge that I received a copy of this evaluation. I have had an opportunity to discuss it with my supervisor.  In signing this evaluation, do not necessarily agree with the conclusions. I understand that I may write my comments  below or on another sheet of paper.

permanent employee who has received an overall evaluation of  "Unsatisfactory" or  "Needs Improvement,"  must  first request a review the Performance Evaluation by the Department Director within ten (10) calendar days.  If the decision of the Director is not acceptable the employee, the employee may continue the appeal within ten (10) calendar days after receipt of the Director's decision by making a quest in writing to the Personnel Division Director, of the Employee Relations Department.

ave read and understand the above appeal process.

EMPLOYEE COMMENTS:  *A response will be forthcoming to be attached.*

EMPLOYEE'S SIGNATURE  *Refuses to Sign*          DATE  7/9/08

1-6A 2/92

*Susan Koot*

TGRCC
MDCR

RESPONSE TO EVALUATION SERVED ON JULY 9, 2008

2008 JUL 10  AM II: 36

In this response, I will be highlighting all the statements made in my evaluation that clearly show these evaluation ratings as erroneous and incongruous. The suspensions written about in this evaluation by Captain Ramsey were not related to Captain Ramsey, but were given by a previous supervisor.

Captain Marvin Ramsey and Chief Manny Fernandez said I attended this "anger management course" during this rating period, when in fact I had not attended such a course during this rating period.  It is the policy of the Miami-Dade County Employee Assistance Program to not discuss such matters of confidential information and prescribed psychological counseling, even in an e-mail that could lead to public scrutiny.   So, if I had attended such a class during this rating period, it still would be inappropriate to put it in an evaluation.

There are many issues that led up to this underrated evaluation.  These issues begin with the retaliatory actions of an angry previous supervisor.  They relate to retaliation for my whistleblowing on her improper behavior that ended up being heard before the Commission on Ethics, because the Corrections and Rehabilitation Department Internal Affairs Unit would not address the behavior. So I will now give some background information as to why Captain Ramsey felt he needed to continue to support the unethical actions of the department management.

Unfortunately, these destructive efforts by the department have negatively impacted my ability to seek employment elsewhere despite my being an honor role student, obtaining a dual Bachelor's Degree in Business, and my 27 years of work experience with Miami-Dade County.

I will also be pointing out the erroneous statements in my evaluation. Because DARs play a major role in this evaluation, I want to discuss them for a moment. They were fabricated by my former supervisor Commander Myriam Kovacs. One DAR not served and the other two served at the same time, are now mentioned in my evaluation for a second time. I had already received mention of them in an interim evaluation. The issues were absolutely contrived scenarios of retaliation. Commander Kovacs, had written a third DAR #D07-134, but it was held back by the department because it was so frivolous. The not-served DAR was punishment for turning in my response to the first two DARs to Linda Garrett, Head Secretary, and asking her to please send it downstairs to Commander Kovacs.  I no longer worked at the Headquarters building, and I said to Ms. Garrett that I was leaving for my office.  If she could please send it downstairs I would appreciate it.

This current evaluation 02/12/2007 to 02/10/2008, is full of jumbled and simply false facts. It took Captain Ramsey six months past the due deadline to make all these mistakes on this evaluation, and then serve me with it. I did not receive 30

– 2 –

days for "jumping chain of command" as he states. I did not receive five days for discourteousness as he states. (see the attached DARs – all three of them).

I did offer written proof that I was innocent of the charges against me, but management ignored my proof. I did not jump my chain of command as stated on the first DAR. I had informed my supervisor of the issue, I had a long meeting with her supervisor Chief Bendross. I had a two hour meeting with Assistant Director Nancy Vinock before going to Director Ryan. Five days without pay for trying to report a missing badge (security item) – which was my job to do.

Likewise, I was not rude to the repairman and he never made any statement to that effect. Commander Kovacs never quoted anything I said, because it did not happen as she stated. I simply said with emphasis "I <u>do</u> know how to set the time clock." Mr. Camacho had told me three times, I did not know how to set the time clock. I said I did. I was on the defensive. That was the extent of the word exchange, but because I had filed a whistleblowing case against Commander Kovacs she was looking for even an erroneous charge against me. Commander Kovacs did not go to the alleged victim, Mr. Camacho for a statement. I called him and went to see him and he wrote a letter on my behalf stating I was "<u>not</u> <u>rude</u>" to him. That was ignored by Director Ryan, as well as a second witness statement on my behalf from another clerk Ms. Monica Davis. People do have differences of opinion in offices all the time, however, Mr. Camacho backed me with the truth, and yet I was still threatened with demotion or worse (a statement by Sandy Thomas of Labor Management), and then I was given <u>six weeks</u> <u>without pay</u> by Director Ryan, all to appease Commander Kovacs. Clearly, there were other underlying issues behind Commander Kovacs' and Director Ryan's display of anger at me. The other issue was called "whistleblowing." In an effort to investigate a potential security breech and public safety issue, I turned in e-mail evidence to Internal Affairs. The evidence was written by Commander Kovacs and it ultimately went to the Miami-Dade Commission on Ethics.

I will explain what I believe prompted Captain Ramsey to complete this evaluation as it is, and what caused him to fold under pressure in his interaction with Director Ryan. To fully understand, one should reference a memo written by Director Ryan dated November 20, 2007. It is pretty obvious that Director Timothy P. Ryan was grilling Captain Ramsey regarding me. He was unhappy that Captain Ramsey had presented me with a letter of recommendation for my work. Director Ryan was trying to decide how to refute the evidence of my innocence presented at the DAR appeal hearing. After the hearing, Director Ryan argued with himself in a six page memo about me (see attached). Director Ryan did not get many of the facts correct in the memo, not even the name of his own witness. Chief Sandra Clayton-Spates had attended the proceedings, not Chief Bendross (see the first paragraph on page one). He then decided to ignore all evidence contradicting guilt, and issue the 30 days of suspension anyway.

– 3 –

In that same memo Director Ryan states he was told by Captain Ramsey that the letter of recommendation was signed by Captain Ramsey "without [his] truly looking at it," (see top of page 3). A captain of large jail facility would sign something without knowing what he was signing? I was, by the way, standing next to Captain Ramsey when I insisted he "read the letter of recommendation carefully," before he signed it. Director Ryan then said that Captain Ramsey, when asked to explain why he had given me a letter of recommendation said "he was 'thinking' about her [my] performance in 1999-2000." So in one breath he said he didn't know what he was signing, and in the next moment he admits he <u>did</u> know it was a letter of recommendation, but he signed it in a daze of reverie. Which is it? (See the attached <u>signed</u> letter of reference).

Now, to more closely scrutinize the discrepancies clearly evident in this evaluation we can look at each section and then fit all the pieces together. Chief Fernandez and Captain Ramsey have contradicted themselves throughout, and together, they have falsified this document. It is not the first time, or even the second time that Captain Ramsey has spoken or written erroneous statements about me, and then intentionally hid them from my knowledge. These statements paint a fabricated negative persona of me. He would like to claim I am not a good employee, and help Director Timothy P. Ryan to justify his unfair and harsh treatment of me, but it is not that easy when you can not find evidence to support your statements, you support my rebuttal instead.

If this evaluation had been delivered to me in February 2008, when it was due, instead of July 2008, I am sure it would have had a different tone. However, because I recently discovered some of the statements Captain Ramsey made behind my back and verbally brought them to his attention, the tone of the evaluation became negative and he lowered my rating. His actions probably stem from his own guilt.

**Section by Section – Point by Point – Let's look at the Evaluation Closely**

Granted, since an evaluation is subjective, review of the first two categories with a rating of "Above Satisfactory" is arguably low, but acceptable. To give me the overall extremely low ratings in the rest of the evaluation is just intentionally destructive and undeserving of my work and personality. I'll refer to documentation that is either quoted, or can be attached that will show the power of what supervisors can do that are making statements of libel and defamation of character.

Discrepancies within this evaluation are everywhere. Notice the interpersonal skills references hidden in the "Quality of Work" section and even in the "Work Habits" section. For easy reference, look for the underlined in this document to find commendations that are buried, but are really <u>Interpersonal Skills</u>. I will point them out, but they are readily obvious to the discerning reader, one that can pick

– 4 –

up on the nuances of true meaning.  Captain Ramsey cannot help himself from unintentionally giving me accolades.

**Quantity of Work**, quoting Captain Ramsey about my work, "The work load is tremendous," and I [Susan] do it "in a timely manner." It says I "Often…remain after hours to ensure that specific deadlines are met." That sounds like someone performing at an "Outstanding" level, yet I got "Above Satisfactory."  Captain Ramsey stated here that I was "responsible for implementing a filing system that makes locating items a simple task." Replacement of a system that did not work well with one that I developed you would think, would be under the topic of "Quality of Work," but you would also think was worth an "Outstanding" mention.

**Quality of Work**, quoting Captain Ramsey, he says about me that "Spelling and grammar are some of her strong assets." Then he goes on to say that I have "a wealth of knowledge." That sounds at least Above Satisfactory.  Then what should have been a commendation under Interpersonal Skills were the next two quotes. Captain Ramsey states something that definitely disputes the "Needs Improvement" rating he gave when he says that I "willingly assists others in the office with these much appreciated skills."

Then again, another commendation of Interpersonal Skills under the Quality of Work section, when Captain Ramsey states that "Mrs. Root does not hesitate to inform her supervisor about issues and concerns."  That sounds like a very strong Interpersonal Skill to have received a "Needs Improvement" in the that Interpersonal Skills section.  These are discrepancies between the comments and the ratings.

In **Work Habits**, Captain Ramsey talks about my using good "safety measures," and that "She observes her assigned work hours and has used very little sick time."  All of that sounded "Outstanding."  He continues raving about me by saying I schedule my leave time "responsibly" keeping my "absence from having a severe impact on the overall operation of the facility."  That sounds like someone who is cooperating pretty well for only a "Satisfactory" rating.  As pointed out, this type of cooperation is in Interpersonal Skills, but it appears in here.

So far there have been at least three outstanding mentions of Interpersonal Skills and we haven't even gotten to the Interpersonal Skills section.  Let us go there now.

Under **Interpersonal Skills**, where Captain Ramsey rated, "Needs Improvement" the narrative should be looked at carefully, because what was said does not match the rating.  For example, the first line says, "Mrs. Root has good interpersonal skills and utilizes them during the performance of her duties." Huh? That does not match the rating.

– 5 –

Moving along in the same Interpersonal Skills category, Captain Ramsey talks about my impatience. Maybe he was referring to the day he told me I could not use my own Annual Leave time to attend an Ethics Commission hearing regarding my personal whistleblowing case against my former supervisors and the Director. After the Corrections and Rehabilitation Department had not moved on the issue as filed in an Internal Affairs complaint approximately nine months earlier, I had filed with the Miami-Dade County Commission on Ethics. I *did* tell Captain Ramsey that the Miami-Dade County Ethics Commission had neglected to tell me the hearing was taking place. I had discovered the scheduled hearing one day before it was to occur. The Commission on Ethics had not bothered to mention it to me, and had only invited the four persons of the Corrections and Rehabilitation Management that had been accused by me.   I told Captain Ramsey that I needed to attend, and he still denied my "Annual" to attend my own hearing, Investigator Mr. Rosario's e-mail later that day, stating to me "YOU HAVE A RIGHT TO BE THERE," made it almost impossible for Captain Ramsey to continue to refuse and so he relented and let me have the one day off (see e-mail). The Captain had done his best to keep me away from that hearing. It was quite obvious he thought he was acting in the best interest of Director Ryan, not his secretary.   It wasn't until about a month ago that I discovered an e-mail Captain Ramsey had sent to Mr. Rosario after being successfully pressured into letting me go to the hearing.  Captain Ramsey had made nasty comments about me behind my back.

Captain Ramsey states that others caused confrontations during this rating period, but "not all were initiated by her." That sounds as if maybe Captain Ramsey may have initiated a few, such as the one just mentioned.

Then Captain Ramsey talks about me going "beyond the call of duty to assist the general public, with the results being beneficial to all," that sounds like good Interpersonal Skills to me. Combine that with the already mentioned, "willingly assists others in the office with these much appreciated skills," and we have a very glowing remark to make about someone  it doesn't really sound like "Needs Improvement" as rated.

To wrap up, I will add a few comments that deal with what Captain Ramsey saw as my "bitterness," and I see as my dissatisfaction with an unethical department. I had filed two Internal Affairs cases resulting from the whistleblowing, and a cover up by Commander Kovacs. One case was handed to the offending Commander Kovacs to investigate herself, and the other to Commander Kovacs' supervisor Chief Bendross to investigate her subordinate and her own personal involvement (I had brought the whistleblowing to Chief Bendross in an hour long meeting, then to her supervisor Assistant Director Nancy Vinock in a two-hour long meeting).   Corrections and Rehabilitation Department's Internal Affairs office, despite written proof of the guilt of these supervisors, "swept it all under the rug." Witnesses were not interviewed, and both cases were suddenly closed

– 6 –

a week before the Federal Investigators came in from Washington to Investigate our department, including Internal Affairs.

Further, Commander Kovacs had personally attacked me in my 2006 evaluation for me having exposed her misconduct concerning the badges and potential security breech. I had taken my complaints up the chain of command. All of a sudden, I go from the greatest person under the sun and a rating of "Outstanding" in 2005 to "Needs Improvement" in 2006. The second Internal Affairs investigation I had called for them to investigate was a fabricated story by Commander Kovacs that said I tried to sell a Director Ryan, African goods two weeks after he took management of the department and stopped by my desk. Anyone that knows me knows that I have not ever sold on the job, not even on my lunch hour.

MIAMI-DADE COUNTY
### *EMPLOYEE PERFORMANCE EVALUATION*

| ...me | (LAST) | (FIRST) | (INITIAL) | | Period Covered | | |
|---|---|---|---|---|---|---|---|
| | **ROOT** | **SUSAN** | **A.** | From | 02/12/2007 | To | 02/10//2008 |
| | | | | | Mo.  Day  Yr. | | Mo.  Day  Yr. |

| Classification | Status | If Prob. Date Ends | Employee Number |
|---|---|---|---|
| ADMIN. SECRETARY | | | 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 |

| Department | Division | Unit |
|---|---|---|
| CORRECT. & REHAB. | EAST OPERATIONS | TGKCC |

REASON FOR REVIEW

☐ Merit Raise    ☐ Status Change    ☐ Annual Review    ☐ Other    ☐ Due Back to Personnel Section by _____

Raters:  It is understood that the importance of each category will vary with job classification and department. Explain your
rating in terms of performance in each category.  Mark the appropriate box.  Use additional sheets if necessary.

**QUANTITY OF WORK:** Includes amount of work performed.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☐ Satisfactory    ☑ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root has been assigned as the Administrative Secretary at the Turner Guilford Knight Correctional Center,
for the majority of this rating period.  The work load for this position is tremendous.  Mrs. Root manages to perform at an
expected level and maintains order, as it relates to daily priorities.  Mrs. Root is responsible for completing assignments given
to her by the facility supervisor and assisting in the day-to-day delivery of services.  Mrs. Root completes these assignments in
a timely manner.  Often, she remains after hours to ensure that specific deadlines are met.       **Cont'd**

**'IALITY OF WORK:** Includes accuracy, achievement of objectives, effectiveness, initiative and resourcefulness and,
.atness of work product.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☐ Satisfactory    ☑ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root produces a neat work product and she takes great pride in the work she does.  Spelling and grammar
are some of her strong assets and she willingly assists others in the office with these much appreciated skills.  Mrs. Root has
approximately twenty-seven years of clerical experience and she harbors a wealth of knowledge that she refers to when
needing additional resources.  Mrs. Root does not hesitate to inform her supervisor about issues and concerns.  This initiative
carries over to her being able to resolve issues as they arise, which eliminates the disruption of services.

**WORK HABITS:** Includes attendance, observance of work hours, completion of work on schedule, compliance with rules,
policies, and directives, safety practice and use of tools and equipment.

RATING:  ☐ Unsatisfactory    ☐ Needs Improvement    ☑ Satisfactory    ☐ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root continues to practice safety measures, relative to her current assignment.  She observes her assigned
work hours and has used very little sick time during this rating period.  She completes work on schedule and complies with
rules that pertain to her everyday administrative duties.  She schedules her leave time responsibly, keeping her absence from
having a severe impact on the overall operation of the facility. The tools of her trade are computers and other office machinery;
she has no issues with the use of them. During this rating period, Mrs. Root served a thirty (30) day suspension for violating the
chain of command (DAR #D07-084).  Mrs. Root attended an anger management course as a result of DAR #D07-084.

**INTERPERSONAL SKILLS:**  Includes participation and teamwork; contribution to unit morale; working cooperatively
with the public, peers, and subordinates; and accepting advice and counseling from superiors.

RATING:  ☐ Unsatisfactory    ☑ Needs Improvement    ☐ Satisfactory    ☐ Above Satisfactory    ☐ Outstanding

Explain Why: Mrs. Root has good interpersonal skills and utilizes them during the performance of her duties. However, her
'natience sometimes leads to minor disagreements between her and others. Some of these confrontations could be avoided.
.th her many years of experience, Mrs. Root should know how to agree or disagree without the results becoming an issue that
stifles her rapport with others.  Although not all confrontations were initiated by her, her responses did not improve the
situations.  During this rating period, Mrs. Root served a five (5) day suspension for being discourteous and insubordinate (DAR
#D07-083).                    **Cont'd**

Root, Susan
Employee Performance Evaluation
02/12/2007 to 02/10/2008
   ge 2 of 2

## 1. QUANTITY OF WORK:

Mrs. Root has many years of experience with Miami-Dade County.  She is responsible for implementing a filing system that makes locating items a simple task.

## 4. INTERPERSONAL SKILLS

Nevertheless, I have witnessed Mrs. Root go beyond the call of duty to assist the general public, with the results being beneficial to all.. Mrs. Root does seek advice, on occasion. However, when given constructive criticism, she remains rigid and she does not willingly accept it for her betterment.  She should strive to accept advice with an open mind.

RATER'S OVERALL EVALUATION --- Only one rating factor to be checked.

☐ **Unsatisfactory:** Performance is inadequate and must be corrected.

☐ **Needs Improvement:** Performance does not fully meet job requirements as indicated below.

☑ **Satisfactory:** Employee is performing as required and expected in a satisfactory manner.

☐ **Above Satisfactory:** Performance surpasses job requirements.

☐ **Outstanding:** Consistently conspicuous, distinguished performance. Employee displays initiative and creativity. Employee has substantially enhanced departmental efficiency and/or effectiveness.

f an employee is eligible for merit increase, check following: ☐ Granted ☐ Deferred, reevaluate in _____ months.

' an employee is eligible for permanent status, check following: ☐ Granted ☐ Denied ☐ Extended _____ months

vith the Employee's written permission. (Attached) (Probationary period may not extend beyond one year.)

**VAYS THE EMPLOYEE CAN OR MUST IMPROVE PERFORMANCE:** (If overall rating is Needs Improvement or Unsatisfactory, a written lan of action for improvement must be included in this section. Optional if Satisfactory or better).

     Mrs. Root must realize that her continued participation in self-help courses, whether by Department mandate, or choosing to go on her own, will no doubt refresh skills that she already possesses in her repertoire. She should seek to make her recent and past indifferences with former supervisors a thing of the past. Her current work assignment requires that she remain focused on the duties at hand and not allow her past to hinder her current performance. She should strive to become better not bitter. As a member of the Miami-Dade Corrections Department, Mrs. Root is expected to continue to request training as the opportunities arise.

report is based on my observations, knowledge of employee's performance and review of applicable information. It represents my best ɔment of the employee's performance.

ATER'S SIGNATURE _____ DATE 7-2-08

rint Name     Marvin Ramsey     TITLE Correctional Captain

have reviewed this report and discussed it with the rater. It represents an accurate appraisal of the employee's performance in accordance th Administrative Order. I concur in the recommendation, if any, as to merit raise and/or permanent status.

EVIEWER'S SIGNATURE _____ DATE 7-9-08

rint Name     Manny Fernandez     TITLE Correctional Chief

acknowledge that I received a copy of this evaluation. I have had an opportunity to discuss it with my supervisor. In signing this evaluation, do not necessarily agree with the conclusions. I understand that I may write my comments below or on another sheet of paper.

permanent employee who has received an overall evaluation of "Unsatisfactory" or "Needs Improvement," must first request a review f the Performance Evaluation by the Department Director within ten (10) calendar days. If the decision of the Director is not acceptable the employee, the employee may continue the appeal within ten (10) calendar days after receipt of the Director's decision by making a ɔquest in writing to the Personnel Division Director, of the Employee Relations Department.

have read and understand the above appeal process.

MPLOYEE COMMENTS: *A response will be forthcoming to be attached.*

IPLOYEE'S SIGNATURE *Refuses to Sign*     DATE 7/9/08

ɔ1-6A 2/92

METROPOLITAN DADE COUNTY, FLORIDA
DISCIPLINARY ACTION REPORT

## D07-083

Date   June 18  2007

| Name | | |
|---|---|---|
| Susan Root | | 12/29/1980 |
| Classification | | Date of Hire |
| Administrative Secretary | | Employee Status |

| Department | Division | Area | ☐ Permanent   ☐ Probational   ☒ Other |
|---|---|---|---|
| MDCR | Administrative Services | Training Bureau | |

You are hereby charged with violating the County's Personnel Rules, Chapter VIII. Section 7  Paragraph

(B   )  That the employee has been offensive in his conduct towards his fellow employees  wards of the County

or the public

(L   )  That the employee has violated the provisions of departmental rules to wit:  DSOP 2 2.012 Courtesy, DSOP

4-001, Succession of Command and Chain of Command.

(S   )  That the employee is antagonistic tow ards supervisors and fellow employees criticizing orders, rules, and  po-

licies, and whose conduct interferes with the proper cooperation of employees and impairs the efficiency of

County Service.

FACTS        (Description of any specific actions, statements made by employee; attach statements of witness  if any, and attach copies of other
documentation if appropriate   Also state reasons for recommendations.)

On June 12, 2007, you violated chain of command by corresponding via e-mail to Assistant Director Nancy Vinock and Director Timothy Ryan.  You excluded your immediate supervisor, Training Bureau Commander Myriam Kovacs, Administrative Services Division Chief, Denise Bendross, and Deputy Director Marydell Guevara from the correspondence.  (see attachment).  The tone and language you used in the correspondence is disrespectful and unprofessional.  The subject title used is sarcastic and critical in tone.  The purpose of your e-mail was to find out the status of a previous e-mail, which you submitted on May 10, 2007 directly to Director Timothy Ryan violating your entire chain of command.  (see attached).  Director Ryan sent it to Ms. Vinock for a response, and she forwarded a copy to me.

This is the second time that you have used e-mail in an unacceptable manner.  Deputy Director Guevara admonished you for the same type of action in August, 2006.  When she directed you to stop using the e-mail as a forum to express your personal opinions or criticize departmental procedures, and decisions, I followed up by also re-iterating to you verbally that your e-mail was inappropriate.  Your response to me was that you had communicated back with her.  I was not copied on that correspondence either.  Your continued lack of respect towards your chain of command will not be tolerated.  Any further chain of command violations, or insubordinate behavior will result in more severe disciplinary action including dismissal.

(Attach additional sheets as necessary)

Supervisor's Signature / Date ___ 7/6/07

In signing this Report I acknowledge only that it has been discussed with me and that I have received a copy.  I understand that  I may respond orally or in writing and that such response will be made a part of this Report and taken into consideration prior to   a final determination being made

Employee's Signature/Date

| RECOMMENDED ACTION | ☐ Written Reprimand | ☐ Day(s) Suspension | |
|---|---|---|---|
| | ☐ Dismissal | Effective Date (s) | ☐ Demotion |

METROPOLITAN DADE COUNTY, FLORIDA
## DISCIPLINARY ACTION REPORT  D07-084

Date  June 19, 2007

Name
Susan Root                                                            12/29/80
Classification                                                   Date of Hire
  Administrative Secretary                              Employee Status

| Department | Division | Area | |
|---|---|---|---|
| MDCR | Administrative Services | Training Bureau | ☑ Permanent  ☐ Probational  ☒ Other<br>EXEMPT |

You are hereby charged with violating the County's Personnel Rules, Chapter VIII, Section 7, Paragraph:

( B )  That the employee has been offensive in his conduct towards his felllow employees, wards of the County or the

     public

( L )  That the employee has violated the provisions of departmental rules to wit: DSOP 2.2.012 Courtesy, 2.2058

     Violations of Standards of Conduct

(   )  _____

FACTS:      (Description of any specific actions, statements made by employee; attach statements of witness, if any, and attach copies of other
            documentation if appropriate  Also state reasons for recommendations.)

On June 18, 2007 at approximately 2:45 p.m. while I was working in my cubicle, I heard yelling coming from your cubicle. This is a distance of approximately 100 feet. You appeared to be having an argument with someone. I exited my cubicle and walked up to your work station. I witnessed you yelling at a gentleman who was attempting to explain to you how to properly set the time clock. While the gentleman was attempting to interject a point, you kept interrupting him in a very unprofessional manner, using a very rude tone. I had to intervene and in a harsh manner direct you to stop yelling and acting unprofessionally. I also directed you to apologize to the gentleman. At this point you began to state that I was yelling at you. Prior to me arriving at your cubicle, Lt. McMullen, Cpl. Davids, and Officer Major had also walked over to your desk to see who you were addressing in such an offensive manner. Departmental policy calls for you to be civil and courteous to co-workers and the public at all times. Ms. Root, your behavior cannot be tolerated.  Further violations of this nature will lead to progressive disciplinary action up to and including termination.

Attach additional sheets as necessary)
                                                      Supervisor's Signature / Date
signing this Report I acknowledge only that it has been discussed with me and that I have received a copy. I understand that I
ay respond orally or in writing and that such response will be made a part of this Report and taken into consideration prior to a final
termination being made.  *This only meaning that I am*
*receiving the reprimands not that I agree with it*

                                                      Employee's Signature/Date

COMMENDED ACTION ☐ Written Reprimand  ☐ Day(s) Suspension
                 ☐ Dismissal    Effective Date (s) _____          ☐ Demotion

AL ACTION:

METROPOLITAN DADE COUNTY

**DISCIPLINARY ACTION REPORT**

D07-134

Employee Name  Susan Root

Date  August 2, 2007

Classification  Administrative Secretary

Date of Hire  12/29/1980   SS#  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

Corrections & Rehabilitations   TGK

| Department | Division | Area |
|---|---|---|

Employee Status:
☐ Permanent    ☐ Probational    ☐ Other

---

You are hereby charged with violating the County's Personnel Rules, Chapter VIII, Section 7: Paragraph.

( L. )   That the employee has violated the provisions of departmental rules to wit: Corrections and Rehabilitation Department D.S.O.P. #4-001 Succession of Command and Chain of Command, and D.S.O.P. 6-013 Counseling/Discipline Procedures, p. 8, Section IV., D., 1., d., (e).

( )

( )

(Attach additional sheets as necessary)

---

FACTS:   (Description of specific actions, statements made by employee; attach statements of witness, if any, and attach copies of other documents if appropriate.  Also state reasons for recommendations.)

On July 6, 2007, you were served Disciplinary Actions #D07-083 and #D0-084, by Commander M. Kovacs. You were given 72 hours to present a rebuttal, reports, or any other information to the serving supervisor, as described in D.S.O.P. 6-013. Contrary to policy, and in violation of following the proper chain of command, you presented your response to the director's office. This is a violation of the procedure and a blatant disregard for the policy and procedures in place.  DAR #D07-083 specifically addressed a previous violation of your violating the chain of command, and this repeat offense indicates your failure to take the progressive disciplinary actions seriously.

Ms. Root, your actions were in violation of departmental policy and will not be tolerated.  In a continued effort to correct your behavior and to avoid recurrence of this nature, you are being presented with this Disciplinary Action Report.  Further violations of departmental policy may result in progressive disciplinary action being taken against you, up to and including termination.

(Attach additional sheets as necessary)

Supervisor's Signature /Date

---

In signing this Report I acknowledge only that it has been discussed with me and that I have received a copy. I understand that I may respond orally or in writing and that such response will be made a part of this Report and taken into consideration prior to a final determination being made.

Employee's Signature/Date

RECOMMENDED ACTION:   ☐ Written Reprimand    ☐    Day(s) Suspension    ☐ Demotion
☐ Dismissal    Effective Date(s) _____

FINAL ACTION: _____    FINAL APPROVAL: _____

Signature    Date

DISTRIBUTION:  White copy to Employee — Green to Personnel Division;
Yellow to Division File

162.05-2 Rev. 12/88



**AUTOMATED BUSINESS MACHINES, INC.**
6073 N.W. 167th Street, Suite C-24
Miami, Florida 33015-4347
**Miami-Dade:** (305) 620-0020 • **Broward:** (954) 739-1222
**Palm Beach:** (561) 833-9044 • **Toll Free:** (800) 446-5501
**Fax:** (305) 620-2201 • sales@abmmiami.com
www.abmmiami.com

## FAX COVER SHEET

Date **07/25/07**   Fax # **786-263-5690**

To:   Name **Susan Root**

Company **Corrections and Rehabilitation Department**

From:   Name **German Camacho**

THIS COMMUNICATION CONSISTS OF   **1**   PAGES INCLUDING COVER SHEET.

COMMENTS:

**On, June 18, 2007, the day that I visited the Corrections and Rehabilitation Department, where I had been called to make repairs to the Time Clock machine, Ms Susan Root, Administrative Secretary, did not insult me. We did have a back and forth discussion regarding her ability to set the time clock. She was sure that she had set it correctly, and I believed she did not set it correctly. I was not offended by her but I felt uncomfortable having this argument in front of the other staff.**

German Camacho

# Memorandum 

Date:       November 20, 2007

To:         File

From:       Tim Ryan, Director
            Corrections & Rehabilitation Department

Subject:    Pre-Determination Review (re:  Administrative Secretary Susan Root and DAR #D07-084)

---

The below is being prepared for personal use only.  It may be disclosed under proper process.

On October 5, 2007, I conducted a Pre-Determination Review of Disciplinary Action Report (DAR), #D07-084, at the voluntary request of Administrative Secretary Susan Root.  In attendance were Ms. Root and her representatives who said they were from the NAACP.  These persons were a Ms. Faye Davis, Labor Secretary of the NAACP (and member of MDFD), and another Mr. Mel Reeves, who arrived late.  In attendance from MDCR was Chief Denise Bendross and Mr. Tyrone Williams, Jr., Esquire.

**Point at Issue:**  Relative to an incident, involving Ms. Root, that occurred on June 18, 2007, Ms. Root was served with DAR #D07-084 on July 6, 2007.  This document outlined three (3) violations of county personnel rules.  In addition, serious discipline was recommended and Ms. Root, on July 18, 2007, requested a meeting with me in an effort to clear her name.  That meeting was held on October 5, 2007.

**Historical Perspective:**  About 2:45 p.m. on the afternoon of June 18, 2007, a repair person from Automated Business Machines of Miami, Florida was on site in the Training Unit of the MLK Building.  He was apparently there to address an issue with the "time clock machine".

While pursuing this business, a verbal confrontation is said to have developed between Ms. Root and the repair person.  This altercation apparently escalated to an extent that it was loud enough to be disruptive and come to the attention of a supervisor.  Upon arrival of the supervisor, it was said that Ms. Root was in an unprofessional posture which included rude tone, improper interruption of communication, and unprofessional mannerism.  It was said that Ms. Root was acting in an uncivil and discourteous manner which required the supervisor to intervene in a direct verbal manner.  (Note:  At this point, Ms. Root apparently changed her focus and began a confrontation with the supervisor.)

Upon review of the incident, it was determined that she had violated several County and Department Policies and Rules including:

1.  County's Personnel Rules, Chapter VIII, Section 7, Paragraph (B):

    "That the employee has been offensive in his (her) conduct toward… the public";

2.  County Personnel Rules, Chapter VIII, Section 7 Paragraph (L), "That the employee has violated the provision of departmental rules", to wit:

    • D.S.O.P. 2.2.012, "Courtesy";

        and

    • D.S.O.P. 2.2.058, "Standards of Conduct".

Given this, a Disciplinary Action Report (DAR #D07-084) was prepared.  It was dated June 19, 2007, and was served on Ms. Root on July 6, 2007.  Ms. Root accepted the document, but also signed with these words inscribed:  "This only means that I am ("accepting" crossed out) receiving the paperwork, not that I agree with it."  Such additions are perfectly acceptable.  (Aside:  Since Ms. Root is not covered by a Bargaining Agreement, her rights are constrained to County policy.)

Pre-Determination Review (re: Administrative Secretary Susan Root and DAR #D07-084)
Page 3 of 6

- "Ms Root is highly efficient, organized, and pleasant...";

(Special Note:  When Captain Ramsey was asked to explain his memo after having just had Ms. Root in the position for one month, he said Ms. Root had prepared it and he signed it without truly looking at it.  He added that when he did sign it though, he said he was "thinking" about her performance back in 1999-2000. This seems to discount its attributes.)

I will give due consideration to these.

D.   She said that "this DAR" was, in fact, in the form of retaliation for her challenging her last evaluation.  She said she was given a "false evaluation" and· she appealed the document.  It was implied that this was the only reason that a DAR developed from the contact with the repair person.

Again, this appears to be a self serving statement intended to deflect notice of the action in the event itself.  I find myself discounting the information as not relevant.  I will assess it accordingly.

E.   She said she has been an Administrative Secretary for seventeen (17) years and has had excellent service evaluations.  It was implied that this should be considered.

I will assess this accordingly.

**Ms. Roots' Recommendation:   It was recommended that DAR #D07-084 be "rescinded".   (Note:   I presumed that this means there be no discipline issued in this matter.)**

Discussion:  Giving due consideration to the above, I also reviewed the following:

1.   Although seemingly not part of the presentation, I believe Mr. Reeves made a comment that the MDCR has "a history" of non-sworn staff not receiving their rights.  However, there was no allegation that, "in this case", there were any such issues.

I will simply note this as an aside.

2.   I reviewed Ms. Roots' last personnel evaluations and determined the following (see enclosed):

- 1/30/06 – 1/28/07:  The overall evaluation noted "Needs Improvement".   These issues surround "Work Habits" and "Interpersonal Skills".  (Note:  She refused to sign this and wrote an extensive rebuttal – See Fair Employment Administrative Review-see #3 below.)

- 1/31/05 – 1/29/06:  The overall evaluation was noted as "Outstanding".

- 2/02/04 - 1/30/05:  The overall evaluation was noted as "Above Satisfactory".

Of particular note is that the first two evaluations seem to show very positive work patterns.  However, like noted below she has a practice of working well for a couple of years then showing significant deterioration resulting in transfers (see below).

I will assess these appropriately.

3.   On April 30, 2007, she submitted a "Transfer Request" in which she alleged that her personnel evaluation was a "false document".   Since she mentioned this in her comments, I ·reviewed the information surrounding this submittal.

Since the document outlined allegations of "hostile work environment and retaliation", it was reviewed by the MDCR, Fair Employment Practices Administrator, Ms. Valerie Ephriam-Kelly.  Pursuant to her review,

## Ramsey, Marvin (MDCR)

**From:** Rosario, Kennedy (COE)
**Sent:** Thursday, April 24, 2008 3:10 PM
**To:** Ramsey, Marvin (MDCR)
**Cc:** Murawski, Michael P. (COE); Penichet, Breno P. (COE)
**Subject:** RE: URGENT REGARDING MEETING

Point Taken. It is not the COE policy or authority to involve ourselves in a clearly administrative matter. At no time was your action construed by me as any sought of violation. Mrs. Root, as well as Chief Bendross and Commander Kovacs attended the meeting. The Commission dismissed Mrs. Root's complaint. Oh, it's MR. If I can be of assistance I can be reached at 305-350-0615

**From:** Ramsey, Marvin (MDCR)
**Sent:** Thursday, April 24, 2008 2:47 PM
**To:** Rosario, Kennedy (COE)
**Subject:** RE: URGENT REGARDING MEETING

Good Morning Ms. Rosario, to clear up any misunderstanding regarding my actions or reasoning behind my refusal to allow Mrs. Root to attend this hearing I offer the following. It has and remains protocol of Miami Dade County to notify departments or in some cases supervisors of an employees need to be at a meeting involving them or other county issues. At the time I had no official documentation or even an email to refer to. Mrs.. Root stated to me that she will get the information emailed to me. Again all I asked for was some official documentation or phone call regarding her need to be present. **Mrs. Root rudely stated to me that she would be in attendance regardless if I approved it or not.** I again asked her to have someone send me an email or something which she eventually did. Mrs. Root also led me to believe that all of the persons charged by her would be present at this meeting/hearing, which is different than what you state in your email to her. I did not violate her rights by requesting that someone provide me with information about the hearing or Mrs. Roots need to be present.

**From:** Rosario, Kennedy (COE)
**Sent:** Tuesday, April 22, 2008 12:29 PM
**To:** Root, Susan (MDCR)
**Cc:** Ramsey, Marvin (MDCR)
**Subject:** RE: URGENT REGARDING MEETING

Susan,
What I said was, the COE Advocate asked that I send out to the persons you named (respondents) in your complaint a copy of what he (Advocate) will be presenting to the full Commission. The Commission normally meets once a month, this month's meeting will be on the 24th, Thursday @ 10 A.M. in our offices. I do not know the MDCR policy on the use of your personal time to attend the meeting but according to the COE Executive Director and General Council "YOU HAVE A RIGHT TO BE THERE", (my emphasis). As you can note Captain Ramsey is CC'd.

**From:** Root, Susan (MDCR)
**Sent:** Tuesday, April 22, 2008 11:21 AM
**To:** Rosario, Kennedy (COE)
**Cc:** Ramsey, Marvin (MDCR)
**Subject:** URGENT REGARDING MEETING
**Importance:** High

Concerning our conversation this morning, A few minutes ago, you told me there was a hearing to take place concerning my case and it would be in front of the Advocate. You said it would take

*[handwritten annotations in right margin:]* Not True Captain Ramsey had Mr. Rosario's e-mail because he had been Copied on April 22nd AND Mine

2008, at 10:00 a.m., in your offices, those of the Ethics Commission. You said it was a public hearing and anyone could attend, but since it concerns me I thought it was particularly important that I hear what is transpiring.

You also said that all of the parties involved, charged by me received a memo regarding the meeting. I was not notified of the meeting and now my supervisor says he will deny me taking my personal time to attend the meeting, unless you tell him that you say it is okay for me to attend.

I am asking for the right to be present when the Advocate hears my case. Please notify Captain Marvin Ramsey, that it is okay for me to attend the public hearing concerning me and my case.

Thanking you in advance.

July 27, 2007

To whom it may concern,

Ms. Susan Root, Administrative Secretary, at the Turner Guilford Knight Correctional Center is currently my assistant. On almost a daily basis, I find myself commending the job she is doing for me.

During 1999 through 2002, Ms. Root worked as the captain's secretary while I was a Lieutenant, so we have known each other a number of years. She has always exhibited helpfulness toward me, and I have watched as she assisted others in the same professional manner.

It is my opinion that having her back at the Turner Guilford Knight Correctional Center, in a working capacity is one of the best things that could have happened to add to our excellent staff. Ms. Root is highly efficient, organized, and pleasant, and she looks for ways to make everyone's job easier.

I feel sure that Ms. Root and I are going to continue in a collaborative effort that will take care of the business we are about as loyal, hardworking employees of the Miami Dade County Corrections and Rehabilitation Department.

Sincerely,

Marvin Ramsey, Captain
Turner Guilford Knight Correctional Center
Corrections and Rehabilitation Department

July 27, 2007

To whom it may concern,

Ms. Susan Root, Administrative Secretary, at the Turner Guilford Knight Correctional Center is currently my assistant. On almost a daily basis, I find myself commending the job she is doing for me.

During 1999 through 2002, Ms. Root worked as the captain's secretary while I was a Lieutenant, so we have known each other a number of years. She has always exhibited helpfulness toward me, and I have watched as she assisted others in the same professional manner.

It is my opinion that having her back at the Turner Guilford Knight Correctional Center, in a working capacity is one of the best things that could have happened to add to our excellent staff. Ms. Root is highly efficient, organized, and pleasant, and she looks for ways to make everyone's job easier.

I feel sure that Ms. Root and I are going to continue in a collaborative effort that will take care of the business we are about as loyal, hardworking employees of the Miami Dade County Corrections and Rehabilitation Department.

Sincerely,

Marvin Ramsey, Captain
Turner Guilford Knight Correctional Center
Corrections and Rehabilitation Department

Exhibit G



Nov 10 08 11:50a                                                    p.1

# Memorandum MIAMI-DADE COUNTY

Date:      June 11, 2008

To:        Deputy Director Marydell Guevara
           Badge #3257

From:      Sergeant Dorothy Smith
           Investigator
           Internal Affairs Unit

Subject:   **Subject Employee Notification of Allegations
           Re: Case # 68-PC-HDQTRS-08**


GUEVARA

Pursuant to Article 9, Section A.1 of the P.B.A. Collective Bargaining Agreement, the following information is presented for your review prior to the taking of your statement.

You will be questioned as a subject employee in reference to the following allegation(s):

1.    On February 5, 2008, during a staff meeting, Deputy Director Marydell Guevara made an offensive comment to the staff that she did not give a rat's ass about morale. (Allegation Classification: Departmental Misconduct / Conduct Unbecoming / Improper Procedures)


You are entitled to all the rights and privileges guaranteed by Chapter 112.532, Florida Statutes, entitled, "Law Enforcement Officer's Rights," including the right to have an attorney or other representative present during questioning. Should you decline the presence of a representative, the taking of your statement will proceed as scheduled after case file documents have been provided for your review.


Exhibit H

DATE:                               July 16, 2008

TO:                                 Timothy P. Ryan, Director
                                    Corrections & Rehabilitation
                                    Department

THRU:                               Mary Ann Puig, Chief
                                    Professional Compliance Division

                                    Edwin N. Cambridge, Captain
                                    Security & Internal Affairs Bureau

VIA:                                Edwina Talley, Lieutenant
                                    Internal Affairs Unit

FROM:                               Sergeant Dorothy Smith
                                    Internal Affairs Unit

SUBJECT:                            Complaint of Mr. Walter Clark

CASE NUMBER:                        68-PC-HDQTRS-08

**INVESTIGATION:**

Complainant's Allegations

On February 29, 2008, at approximately 10:19 a.m., Mr. Walter Clark, rendered a sworn taped statement to Sergeant Dorothy Smith, Badge #3685, at the Internal Affairs Unit. Mr. Clark stated the following:

Mr. Clark received several complaints from employees of the Miami Dade Corrections and Rehabilitation Department (MDCR), who wished to remain anonymous for fear of retaliation. Mr. Clark said that the information was brought to his attention because he is an "advocate" for the employees. Mr. Clark was informed by several employees from MDCR that in a meeting held at Corrections Headquarters on February 5, 2008, a "high ranking" official from the department made an offensive comment toward them. Mr. Clark identified the "high ranking" official as Deputy Director Marydell Guevara, Badge #3257.

Mr. Clark said that the rank of the employees attending the meeting ranged from Chiefs to Sergeants. The meeting was regarding shift changes and new assignments for the staff in attendance.

(Investigator's Note: Mr. Clark provided a list of potential attendees in the meeting, along with letters regarding the complaint. (See Official Record #6)

Timothy P. Ryan, Director

Mr. Clark was told that as Deputy Director Guevara addressed the audience, she made comments about morale. Mr. Clark said that Deputy Director Guevara stated that she did not give a "rat's ass" about morale. Mr. Clark was told that the statement was made in response to an unidentified employee's statement that the changes that they were proposing would cause morale problems. Mr. Clark said that this statement upset several employees, because they believed that morale was the key to getting the job done.

Mr. Clark did not know if the statement made by Deputy Director Guevara was addressed in the meeting. Mr. Clark was told by his source that the statement was made in a serious manner, "like pretty much in your face kinda way." Mr. Clark did not have any further information pertaining to the meeting.

(For further details, refer to taped statement)

Complainant alleges that:

1.    On February 5, 2008, during a staff meeting, Deputy Director Marydell Guevara made an offensive comment to the staff that she did not give a rat's ass about morale.    (Allegation    Classification:    Departmental    Misconduct/    Conduct Unbecoming)

Complainant

1.    Mr. Walter Clark, B/M
       P.O. Box 245261
       Pembroke Pines, Florida 33024
       Phone: (954) 272-2260

Criminal Convictions

1.    None

Prior Complaints

1.    Various

Timothy P. Ryan, Director

**Witnesses**

Corrections/Police

a.   Lieutenant Elijah Cone, B/M
     Badge # 3663
     Turner Guilford Knight Correctional Center
     7:00 a.m. X 3:00 p.m. Shift

On April 17, 2008, at approximately 10:05 a.m., Lieutenant Cone rendered a sworn taped statement to Sergeant Smith at the Turner Guilford Knight Correctional Center, (TGK). Lieutenant Cone stated the following:

Lieutenant Cone recalled attending a meeting in February of 2008, at Corrections Headquarters. Lieutenant Cone said that the meeting was the quarterly lieutenants' and captains' meeting. The meetings were normally "chaired" by one of the Departmental Chiefs, and was rotated between them.

Lieutenant Cone stated that during the meeting, they were discussing the days off with Director Timothy P. Ryan, Badge #8. Lieutenant Cone said that the lieutenants began to voice their opinions about the changes that they were told would take place. The lieutenants were not aware that the changes were going to be made until the meeting. Director Ryan told them that he had notified the captains in December of 2007, about the changes and it should have been related to them.

The lieutenants asked if they could be given an opportunity to work something out among themselves so that there would be twenty-four (24) hour coverage in the facilities, as the director wanted. Lieutenant Cone recalled that Lieutenant Curtis Davis, Badge #2671, had a "strong voice" in the meeting and took the lead in speaking on behalf of the lieutenants. The director was in agreement with the lieutenants and ended his discussion. They were allowed to take a five (5) minute break.

After the break, Deputy Director Guevara came up to speak to the lieutenants. Lieutenant Cone said that Deputy Director Guevara gave a speech to the audience. Lieutenant Cone said that there were only lieutenants in the meeting at the time. Lieutenant Cone felt that Deputy Director Guevara was telling them that they should be satisfied that they had jobs. Lieutenant Cone said that during her speech, Deputy Director Guevara stated that she did not give "two rat's ass about trying to make anybody happy." Lieutenant Cone said that Deputy Director Guevara made the statement toward all of the lieutenants in the meeting and not to anyone in particular. Lieutenant Cone said that several of the lieutenants took "offense" to what was said to them.

Deputy Director Guevara further told them that they should not be complaining and should be happy to have jobs. Lieutenant Cone did not know if Deputy Director Guevara was trying to be offensive or demean anyone. Lieutenant Cone stated, "I can't

3

68-PC-HDQTRS-08

Timothy P. Ryan, Director

really speak for all of the lieutenants, but I took it as offense (sic) of it when she said it, because I took it as she did not care about our feelings when she made that comment." Lieutenant Cone recalled hearing some lieutenants say that she (Deputy Director Guevara) spoke to them as if they were kids. Lieutenant Cone could not recall who the lieutenants were that voiced their disagreement with the statement made.

Lieutenant Cone said that several people said that the comment made by Deputy Director Guevara showed that the command staff did not care about them. Lieutenant Cone said that no one wanted to express a concern about the comment to Deputy Director Guevara because she was part of the command staff and they feared retaliation.

Lieutenant Cone said that Deputy Director Guevara appeared to be upset with them because the lieutenants were expressing their feelings about the change of days off.

(For further details, refer to taped statement)


b.      Lieutenant Jennifer Bailey, B/F
        Badge # 4274
        Turner Guilford Knight Correctional Center
        7:00 a.m. X 3:00 p.m. Shift

On April 17, 2008, at approximately 10:24 a.m., Lieutenant Bailey, rendered a sworn taped statement to Sergeant Smith at TGK. Lieutenant Bailey stated the following:

In February of 2008, Lieutenant Bailey attended a quarterly lieutenant's meeting at Corrections Headquarters. Lieutenant Bailey said that the meetings were with the command level staff and were normally pertaining to training or changes within the department. Although the meetings were for the lieutenants, staff from various areas in the department would attend.

Lieutenant Bailey said that on the day of the meeting, they discovered that the lieutenants' days off would be changed to Tuesdays and Wednesdays from their normal days. Lieutenant Bailey said that the lieutenants did not receive any prior notice that the changes were going to happen and were "basically given an ultimatum" in the meeting.

Lieutenant Bailey said that they were told that they had to accept the changes that were taking place. According to Lieutenant Bailey, Deputy Director Guevara stated that she did not give "two rat's ass" about how they felt. Lieutenant Bailey said that the statement was directed to the group of lieutenants in the meeting. Lieutenant Bailey said that no one responded or expressed concerns about the statement made. Lieutenant Bailey stated, "I think we were somewhat shocked."

68-PC-HDQTRS-08

Timothy P. Ryan, Director

Lieutenant Bailey recalled that all of the lieutenants were in the meeting.  Lieutenant Bailey was not sure, but said that she believed that some of the captains and a couple of chiefs were also present when the statement was made.

Lieutenant Bailey recalled that prior to Deputy Director Guevara making the statement, Lieutenant Davis stated that the reason they became lieutenants was because of the weekends off. Lieutenant Davis was speaking to Director Ryan at the time.

Director Ryan told them that he was not interested in what they wanted, but was concerned about the best interest of the county.  Lieutenant Bailey could not recall if Director Ryan was present when Deputy Director Guevara made the statement. Lieutenant Bailey believes that Director Ryan had already left the room.  Lieutenant Bailey could not "recollect", but stated that the captains and chiefs might have also left the room prior to the statement being made.

Lieutenant Bailey said that they (referring to the lieutenants) were hurt and surprised that the statement was made.

(Investigator's note: In concluding her statement, Lieutenant Bailey asked for protection under the Whistle Blower's Act.)

(For further details, refer to taped statement)

c.      Lieutenant Yvette Richardson, B/F
        Badge # 3946
        Turner Guilford Knight Correctional Center
        7:00 a.m. X 3:00 p.m. Shift

On April 17, 2008, at approximately 10:55 a.m., Lieutenant Richardson rendered a sworn taped statement to Sergeant Smith at TGK.  Lieutenant Richardson stated the following:

Lieutenant Richardson recalled attending the quarterly captain and lieutenants' meeting in February 2008. Lieutenant Richardson said that during the meetings, they would discuss some of the things that were happening in operations and they also discussed training issues. Lieutenant Richardson recalled that a discussion about the lieutenants' days off was brought up.

Lieutenant Richardson said that during the February meeting, she became aware that Director Ryan had sent out information that he wanted coverage by the lieutenants in the facilities at all times. They discussed some of the various options available to the lieutenants. One of the options was that the second lieutenants assigned to the day shift would be given Tuesdays and Wednesdays off and would no longer have part of the weekend off.

Timothy P. Ryan, Director

Lieutenant Richardson said that the information pertaining to the lieutenants' days off was given to them several weeks before this meeting, but no one believed it would happen. During this meeting, they discovered that the days off would be changed with the upcoming bid. Some lieutenants asked why, after working so many years in service and moving up the ranks, that some of them would lose their weekends off. Lieutenant Richardson felt that they, including herself, were more concerned about their families and not the job.

Director Ryan "took the floor" and explained to them what their duties and responsibilities were, and that their jobs came first. Director Ryan further told them that he had sent the information pertaining to their days off out in December of 2007. Director Ryan could not understand why they were only now receiving the information.

The lieutenants felt that they should have had a meeting to discuss the issue, prior to the final decision being made. Lieutenant Davis spoke out and stated that none of the options that were presented to them were beneficial to the lieutenants because they would not have time to spend with their families. Lieutenant Davis pointed out that most of the lieutenants had at least twenty (20) years in the department.

According to Lieutenant Richardson, Director Ryan reiterated and held his position that he wanted coverage and that their jobs came first. Later during the discussion, Deputy Director Guevara came to the floor. Lieutenant Richardson stated, "She mentioned that in so many words, we may have taken a selfish mode being more worried about our families and not about the Department." Deputy Director Guevara further told them that they got paid to provide a service.

Lieutenant Richardson recalled that Deputy Director Guevara made "some statement" to the audience, but could not recall what the statement was. Lieutenant Richardson did not believe that Deputy Director Guevara made the statement to lower anyone's morale or insult anyone, but was only trying to get her point across.

Lieutenant Richardson stated, "As far as any statement being made, I think it was just a figure of speech. You know she's talking to her supervisors, her leaders of the department. I am very much surprised that this particular statement would be somewhat (sic) to be investigated." Lieutenant Richardson said that she was not offended by anything said by Deputy Director Guevara and no one expressed to her that they were offended by the statement.

Lieutenant Richardson said that Deputy Director Guevara gave them an opportunity to discuss the days off with each other and they came up with a schedule to provide coverage at all times in the facilities. At the end of their discussion, Lieutenant Davis presented their proposal to Deputy Director Guevara. Lieutenant Richardson said that she (Deputy Director Guevara) was very receptive of what was presented to her and although Director Ryan had already made his decision, Deputy Director Guevara implemented their recommendations.

Timothy P. Ryan, Director

(For further details, refer to taped statement)

d.   Lieutenant Curtis Davis, W/M
     Badge # 2671
     Training and Treatment Center
     3:00 p.m. X 11:00 p.m. Shift

On April 17, 2008, at approximately 11:33 a.m., Lieutenant Davis rendered a sworn taped statement to Sergeant Smith at the Training and Treatment Center, (TTC). Lieutenant Davis stated the following:

In February of 2008, Lieutenant Davis recalled attending the quarterly lieutenants' meeting. Lieutenant Davis recalled in the meeting that they discussed the new days off that were to be allocated to the lieutenants in the April 2008 bid period.

The lieutenants came up with some ideas that were better than what was offered. They were told to go home think it over and return the following Friday with some solutions to present to Deputy Director Guevara.

Lieutenant Davis recalled Deputy Director Guevara addressing the audience in the meeting. Deputy Director Guevara told them that the lieutenants needed to "step to the plate and take responsibility." Some of the lieutenants made statements about the days off.

Lieutenant Davis said that he was not offended by any comments that Deputy Director Guevara made, but found them "disturbing." Lieutenant Davis said that Deputy Director Guevara told them that she did not really give "two rat's ass about morale." Lieutenant Davis said that the subject about the department's morale was mentioned earlier in the meeting. Lieutenant Davis recalled that someone had said the morale was not really good in the department at this time. Lieutenant Davis guessed that Deputy Director Guevara was making reference to what was said earlier when she made her statement.

Lieutenant Davis said that no one responded to the comment because they were in shock. Lieutenant Davis stated, "It seemed out of character from the Guevara I know. So I know I personally was kind of taken aback by the statement." Lieutenant Davis said that Deputy Director Guevara was just trying to get the point across that things needed to get done, and they needed to do them, regardless. Lieutenant Davis believed Deputy Director Guevara could have chosen her words better.

Lieutenant Davis believes that only the lieutenants were present when Deputy Director Guevara addressed them. Deputy Director Guevara left them to come up with a better plan. Lieutenant Davis said that they worked out a plan and presented it to Deputy Director Guevara. She was receptive of their ideas and implemented them.

Lieutenant Davis recalled that Director Ryan had spoken to them previously. He told them that the lieutenants needed to be the representatives for the department, by

68-PC-HDQTRS-08

Timothy P. Ryan, Director

telling new people coming on board that it was a great place to work. Lieutenant Davis said that when he voiced his opinion that taking away the weekends would not give them time to spend with their families, the Director did not have an "ear for it" and it left a bad taste in everyone's mouth. When Deputy Director Guevara made the statement about the "two rat's" it also left a bitter taste in their mouths. Lieutenant Davis felt that what they were telling them was a contradiction.

(For further details, refer to taped statement).

e.    Lieutenant Doris Albury, B/F
       Badge # 3077
       Training and Treatment Center
       11:00 p.m. X 7:00 a.m. Shift

On April 17, 2008, at approximately 11:47 a.m., Lieutenant Albury rendered a sworn taped statement to Sergeant Smith at TTC. Lieutenant Albury stated the following:

In February of 2008, Lieutenant Albury attended the lieutenants' training meeting. During the meeting, several people addressed the audience. All of the lieutenants, captains and chiefs were in attendance.

When Deputy Director Guevara spoke to them, she spoke about the need to change the days off for the lieutenants. Lieutenant Albury could not recall if all of the command staff was in the meeting when Deputy Director Guevara spoke to them, because at some point, they asked everyone to leave except the lieutenants.

Several lieutenants asked questions about the changes and wanted to know if there were alternate schedules that they could utilize. Lieutenant Albury did not recall hearing Deputy Director Guevara make the statement that she did not give two "rat's ass" about morale. Lieutenant Albury said that nothing occurred in the meeting that offended her and no one spoke to her about any comments made by Deputy Director Guevara.

Lieutenant Albury said that the main feeling that the lieutenants were displaying was that it had already been planned that the days off would change without any prior notification.

(For further details, refer to taped statement)

f.    Captain Susan Kronberg, W/F
       Badge # 4137
       Training and Treatment Center
       Variable Shift

On April 17, 2008, at approximately 2:13 p.m., Captain Kronberg rendered a sworn taped statement to Sergeant Smith at TTC. Captain Kronberg stated the following:

68-PC-HDQTRS-08

Timothy P. Ryan, Director

In February of 2008, Captain Kronberg recalled attending the captains' and lieutenants' meeting at Corrections Headquarters. Captain Kronberg stated that the lieutenants' days off were being changed and the Director wanted the captains to come up with a schedule because he wanted a lieutenant on duty at all times.

Captain Kronberg said that the lieutenants were very upset and stated that they had not heard about the changes. Some of the lieutenants would no longer have the weekends off, but would now have Tuesdays and Wednesdays off. Captain Kronberg could not recall who spoke out, but someone mentioned about them having families. According to Captain Kronberg, the director responded that people's families were not his priority. The director said that his priority was for what was best for the county and the department.

Captain Kronberg recalled that at some point Deputy Director Guevara addressed the audience about the changes. Captain Kronberg could not recall who spoke, but remembered that someone in the audience referred to the fact that the morale was already low and now they would be losing their days off. Captain Kronberg stated, "The deputy said that she did not give two rat's ass about morale, basically." Captain Kronberg said that there were a lot of upset people in the room and several people spoke about it afterwards. Captain Kronberg recalled Lieutenant Davis being very upset and stating that in all of his years, he had never been so upset about something that was said to him.

Captain Kronberg said that most of the people in attendance felt that the statement made by Deputy Director Guevara was inappropriate and should not have been said.

(For further details, refer to taped statement)


g.    Lieutenant Norman De Milio, W/M
      Badge # 3652
      Training and Treatment Center
      Variable Shift

On April 25, 2008, at approximately 1:25 p.m., Lieutenant De Milio rendered a sworn taped statement to Investigator Vickie Bright, Badge #011, at TTC. Lieutenant De Milio stated the following:

In February of 2008, Lieutenant De Milio attended the quarterly lieutenants and captains' meeting. Lieutenant De Milio could not recall who was in attendance in the meeting but said that all of the lieutenants, captains, and some commanders attended.

Lieutenant De Milio recalled that one of the topics of the meeting was the days off change for the lieutenants. Lieutenant De Milio believed that Deputy Director Guevara spoke at the meeting. Lieutenant De Milio was not offended by any statements made

Timothy P. Ryan, Director

by Deputy Director Guevara, but recalled hearing other lieutenants express concern about what was said.

Lieutenant De Milio could not recall the exact statement made by Deputy Director Guevara, but believed that it was regarding not caring about their personal lives. Lieutenant De Milio recalled Deputy Director Guevara saying that she could give a "rat's ass" about morale. Lieutenant De Milio said that the statement was not made to anyone in particular. He did not believe that Deputy Director Guevara meant it personally toward anybody. Lieutenant De Milio believed that someone mentioned that was why morale was bad in the department.

Lieutenant De Milio said that he heard comments made by several people after the meeting, but could not recall who spoke about it. Lieutenant De Milio recalled some say that they were offended by the statement.

Lieutenant De Milio could not recall, but believes that there were only lieutenants in the room when the statement was made.

(For further details, refer to taped statement)


h.    Lieutenant Jorge Fuentes, W/M
      Badge # 2591
      Metro West Detention Center
      1:00 p.m. X 11:00 p.m. Shift

On May 2, 2008, at approximately 5:40 a.m., Lieutenant Fuentes rendered a sworn taped statement to Investigator Bright at the Metro West Detention Center (MWDC). Lieutenant Fuentes stated the following:

In February 2008, he attended the captains' and lieutenants' meeting at Corrections Headquarters. The meeting was in reference to the department implementing days off changes for the lieutenants.

During the meeting, Deputy Director Guevara addressed the audience. Lieutenant Fuentes could not recall what Deputy Director Guevara spoke about, but recalled a statement that she made. Lieutenant Fuentes recalled hearing Deputy Director Guevara say that she did not give "two rat's ass about morale." Lieutenant Fuentes said that Deputy Director Guevara made the statement after someone asked her a question about morale due to the new changes they were trying to implement.

Lieutenant Fuentes could not recall whom Deputy Director Guevara was responding to when she made the statement. Lieutenant Fuentes said that he was offended by the statement, but did not speak to anyone about it, "cause nobody seems to listen anyway."

68-PC-HDQTRS-08

Timothy P. Ryan, Director

Lieutenant Fuentes further stated, "You just don't. You're a Deputy Director, you just don't go around saying things like that, especially about morale. You know they usually talk about morale, how we are supposed to try and improve the morale around here, with our subordinates, and then they come to us and tell us they don't care two rat's ass about morale. Yeah, I was offended." Lieutenant Fuentes said that no other comments were made during the meeting.

(For further details, refer to taped statement)

i.       Lieutenant Cassandra Jones, B/F
         Badge # 4369
         Metro West Detention Center
         10:00 p.m. X 6:00 a.m. Shift

On May 8, 2008, at approximately 5:45 a.m., Lieutenant Jones rendered a sworn taped statement to Investigator Bright at MWDC. Lieutenant Jones stated the following:

In February of 2008, Lieutenant Jones attended the quarterly captains' and lieutenants' meeting. Lieutenant Jones recalled that the director briefly came into the meeting as well as the deputy. Lieutenant Jones recalled that the lieutenants' schedule change was the main topic of the meeting.

Lieutenant Jones recalled that Deputy Director Guevara spoke to them about the shift changes regarding the lieutenants. Deputy Director Guevara told them to come up with a schedule, because a lot of lieutenants were complaining that they felt the change was instituted without them giving input.

When asked if she was offended by a comment made by Deputy Director Guevara, Lieutenant Jones recalled one of the lieutenants making a statement about the schedule and the morale, because the changes came about without their input. Lieutenant Jones said that Deputy Director Guevara made a statement that "caught" everybody's attention and made them feel that they did not care about the lieutenants. Lieutenant Jones recalled the statement being about morale. According to Lieutenant Jones, Deputy Director Guevara said something about not giving a "rat's a-s-s" about morale.

Lieutenant Jones said that everyone was a little shocked over the statement because they figured that supervisors would be concerned about the morale of their people. Lieutenant Jones was not aware of anyone addressing the statement made by Deputy Director Guevara.

Lieutenant Jones could not recall if the comment was made prior to or after the captains had left the room.

(For further details, refer to taped statement)

11                              68-PC-HDQTRS-08

Timothy P. Ryan, Director

j.      Lieutenant Lindsay Wilson, B/M
        Badge # 4470
        Metro West Detention Center
        6:00 a.m. X 2:00 p.m. Shift

On June 3, 2008, at approximately 2:50 p.m., Lieutenant Wilson rendered a sworn taped statement to Sergeant Smith at the Internal Affairs Unit.  Lieutenant Wilson stated the following:

In February of 2008, Lieutenant Wilson attended the captains' and lieutenants' meeting at Headquarters.  Lieutenant Wilson recalled Deputy Director Guevara speaking to them about budget cuts, and days off for the lieutenants during the April 2008 Bid period.  Several of the lieutenants voiced a concern about what was being proposed because their days off would be changed from the weekends to Tuesdays and Wednesdays. The lieutenants felt that they were being disrespected because of all the hard work and years they had put in. Lieutenant Wilson recalled that the majority of the lieutenants voiced their dislike of the proposal.

At some point, one of the lieutenants stated that it would not be good for morale if they did this to the lieutenants, because if they treated them this way, what would they do to the rest of the staff. Lieutenant Wilson stated, "I could remember the deputy saying some comment such as, she could give a rat's ass about morale."  Lieutenant Wilson said that he was "taken aback" by the comment because he never had known the deputy to make such comments. Lieutenant Wilson stated, "She was always a motivator. She was always giving motivating feedback, no matter what the situation was, it was always something positive in her message."  Lieutenant Wilson said that he was surprised that the statement was made.

Lieutenant Wilson did not know why the statement was made, but felt that Deputy Director Guevara was frustrated or upset that the lieutenants did not accept the situation that their weekends would be taken away. Deputy Director Guevara reminded them that when they "signed on" to the job, they knew that they might have to work any day or any shift.

Lieutenant Wilson said that the lieutenants were surprised that the statement was made and felt that they had been disrespected. Once Deputy Director Guevara left the room, the lieutenants spoke among themselves and said, "Look how they treat us and we are mid management."  The lieutenants felt that they were expected to keep the morale up among the staff, but were treated unfairly.

Deputy Director Guevara came back to the meeting and told them that she had spoken to the Director and he was giving them one (1) hour to work out a viable solution to the days off schedule. The lieutenants worked out a schedule among themselves.

(For further details, refer to taped statement)

Timothy P. Ryan, Director

k.     Lieutenant Lee Little, B/M
       Badge # 3600
       Reception and Diagnostic Bureau
       6:00 a.m. X 2:00 p.m. Shift

On June 4, 2008, at approximately 11:40 a.m., Lieutenant Little rendered a sworn taped statement to Sergeant Smith at the Pre Trial Detention Center (PTDC).   Lieutenant Little stated the following:

In February of 2008, Lieutenant Little attended a training meeting at the Corrections Headquarters.  Lieutenant Little recalled that some issues came about regarding the bid period for the lieutenants.  Lieutenant Little said that there was an issue pertaining to the lieutenants losing their weekend days off. The information was supposed to be "trickled" down from the top to the operational lieutenants, but was not.

The lieutenants were concerned about the suddenness of the changes and why it was happening so soon. They wanted to come up with a solution to the issue.  Some of the lieutenants knew about the changes, but the majority did not.

Lieutenant Little recalled someone saying that the changes would destroy morale. Lieutenant Little remembered Deputy Director Guevara saying that she could give "two rat's ass" about morale. Lieutenant Little said, "Now I wasn't offended because she said I could give two rat's ass about morale, but me knowing the deputy as long as I've known her, she's always been more of a positive, motivational leadership type person. I was just surprised that it came from her."  Lieutenant Little said that he would have expected someone else to make that kind of statement and was more shocked than anything else.

No one expressed their concerns in the meeting, but afterwards several lieutenants talked among themselves. They too were shocked that the statement was made, and some said that they were surprised because it was not like the deputy to make that kind of statement.

Lieutenant Little said that prior to the deputy speaking to them, the meeting was "heated" and several lieutenants were speaking out all at once.  They were upset about the changes to their days off. The lieutenants felt that they had all this time in the department, and although they were not owed the weekends off, they did a lot of work and should be able to keep the weekends off.

Lieutenant Little stated, "Knowing her like I know her, I can't see her not caring about morale, because she has always been a morale booster." Lieutenant Little said that he has always admired Deputy Director Guevara as a leader, and still did. At the moment when the statement was made he was not offended, but shocked.

(For further details refer to taped statement)

Timothy P. Ryan, Director

l.      Lieutenant Tamara Key, B/F
        Badge # 5001
        Reception and Diagnostic Bureau
        6:00 a.m. X 2:00 p.m. Shift

On June 4, 2008, at approximately 12:20 p.m., Lieutenant Key rendered a sworn taped statement to Sergeant Smith at PTDC. Lieutenant Key stated the following:

Lieutenant Key recalled attending the lieutenants' meeting that occurred in February of 2008. Various topics were discussed during the meeting. Lieutenant Key recalled at some point, Deputy Director Guevara spoke to them about the morale in the department and how they should conduct themselves.

Lieutenant Key did not hear Deputy Director Guevara make a comment that was offensive to her. When asked if Deputy Director Guevara made a comment regarding "a rat's ass" Lieutenant Key said that she (referring to Deputy Director Guevara) said something about morale, but she did not recall the terminology used because she was saying different things. Lieutenant Key stated, "She might have, I don't really remember." Lieutenant Key said that Deputy Director Guevara was not upset with the lieutenants, but appeared to be disappointed and concerned in the way that they were conducting themselves.

Lieutenant Key said that the lieutenants were not taking responsibility for their actions and had no "ownership" in what they were required to do. The lieutenants were very upset about the bid process and what was asked of them. The lieutenants spoke about how the changes would impact their families. Lieutenant Key could not recall what was said, but believed it needed to be said.

Lieutenant Key said, "We need to step it up on a different level. We need to accept responsibility and things change. We need to accept the change or move on or find another job. That's how I look at it."

Lieutenant Key had never heard Deputy Director Guevara address them in a disrespectful manner.

(For further details, refer to taped statement)

m.      Lieutenant Daniel Junior, B/M
        Badge # 4470
        Pre Trial Detention Center
        7:00 a.m. X 3:00 p.m. Shift

On June 4, 2008, at approximately 12:43 p.m., Lieutenant Junior rendered a sworn taped statement to Sergeant Smith at PTDC. Lieutenant Junior stated the following:

68-PC-HDQTRS-08

Timothy P. Ryan, Director

In February of 2008, Lieutenant Junior was in attendance at the quarterly lieutenants' and captains' meeting. Lieutenant Junior could not recall what the meeting was about on this occasion, but stated that they were normally training sessions.

Lieutenant Junior stated that during the meeting, he did not hear Deputy Director Guevara make any statement that he felt was offensive. Lieutenant Junior did not recall hearing Deputy Director Guevara make a statement regarding "a rat's ass." Lieutenant Junior has never heard Deputy Director Guevara use profanity while speaking to the lieutenants.

Lieutenant Junior recalled someone later making reference to the meeting and indicating that the statement was made by Deputy Director Guevara, but he was not present and did not know the information to be factual. Lieutenant Junior could not recall who gave him this information.

(For further details, refer to taped statement)


n.     Lieutenant Bridgette Cone, B/F
       Badge # 4042
       Pre Trial Detention Center
       7:00 a.m. X 3:00 p.m. Shift

On June 4, 2008, at approximately 12:55 p.m., Lieutenant Cone rendered a sworn taped statement to Sergeant Smith at PTDC. Lieutenant Cone stated the following:

In February of 2008, Lieutenant Cone attended a lieutenants' meeting held at Corrections Headquarters.  In the meeting, they discussed policies, departmental changes and the lieutenants' days off and shifts changes that were to occur in the next bid rotation period.

Lieutenant Cone said that different command staff personnel spoke to them about the changes that day. When Deputy Director Guevara addressed the lieutenants, they (the lieutenants) were upset because they felt that they did not receive enough notice about the changes.

Some of the lieutenants spoke out and stated that they should have been given more time to make a decision about the changes proposed and not just the couple of hours they were given.

Lieutenant Cone recalled that Deputy Director Guevara spoke to them about morale. Lieutenant Cone said that as Deputy Director Guevara spoke to them, she made the statement that she did not give "a rat's ass" about morale. Lieutenant Cone was not offended by the statement and stated, "I'm not saying it was offensive, because I guess when people are stressed out and different pressures are put on them, people say a lot of things."

Timothy P. Ryan, Director

Lieutenant Cone said that what proceeded the statement made by Deputy Director Guevara was a lot of lieutenants were voicing their opinions about the changes and the lack of information provided to them. Deputy Director Guevara told them to come up with a proposal for their shift changes and days off. Lieutenant Cone said that Deputy Director Guevara appeared to be upset or to be having a bad day and under a lot of stress. Lieutenant Cone said that Deputy Director Guevara had never spoken to them in that manner before nor made any comments of that nature before.

(For further details, refer to taped statement)

o.   Lieutenant Edgar Nieves, W/M
     Badge # 4039
     Pre Trial Detention Center
     6:00 a.m. X 2:00 p.m. Shift

On June 4, 2008, at approximately 1:05 p.m., Lieutenant Nieves rendered a sworn taped statement to Sergeant Smith at PTDC. Lieutenant Nieves stated the following:

Lieutenant Nieves recalled attending the lieutenants' meeting in February of 2008. Lieutenant Nieves remembered that departmental projections as well as morale were some of the topics discussed in the meeting. Lieutenant Nieves recalled that they also discussed the lieutenants working on the weekends.

Lieutenant Nieves said that some of the lieutenants were comfortable with the circumstances, and others were not. The lieutenants wanted an opportunity to discuss the issue among themselves so that they could make recommendations regarding the proposal presented to them.

Lieutenant Nieves recalled that Director Ryan spoke to them initially and then the Deputy Director spoke to them. Toward the end of the meeting, Deputy Director Guevara was overseeing the process.

Lieutenant Nieves said that Deputy Director Guevara did not make any statements that he felt were offensive when she addressed them. Lieutenant Nieves did not recall hearing Deputy Director Guevara make a statement regarding a "rat's ass" as she spoke to them. Lieutenant Nieves stated that he had "limited recollection" of what was discussed in the meeting. Lieutenant Nieves said that Deputy Director Guevara did not appear to be upset, but was direct and firm when she addressed them.

Lieutenant Nieves has never heard Deputy Director Guevara use profanity toward them or say anything offensive in previous meetings.

(For further details, refer to taped statement)

Timothy P. Ryan, Director

Civilian

.a.    None

**Officer Involved**

1.    Deputy Director Marydell Guevara, W/F
      Badge # 3257
      Miami Dade Corrections
      and Rehabilitation Department Headquarters
      Variable Shift

On June 11, 2008, at approximately 11:45 a.m., Deputy Director Guevara rendered a sworn taped statement to Sergeant Smith, at the Miami Dade Corrections and Rehabilitation Department Headquarters. Deputy Director Guevara was given an opportunity to have a representative present during her statement, but chose to proceed without one. Deputy Director Guevara stated the following:

In February of 2008, a training day meeting was held at Corrections Headquarters. Deputy Director Guevara said that all of the lieutenants, captains, and commanders were gathered to disseminate information. The meeting was to be held for the entire day.

Deputy Director Guevara said that during the meeting several items were discussed and at the end of the meeting the lieutenants were given an opportunity to meet and work on the changes that were to be made to their schedules for the upcoming April bid period.

Deputy Director Guevara stated that in October and December of 2007, Director Ryan spoke to Assistant Director Ronald Kovacs, Badge #2658, as well as the chiefs and captains about the changes he wanted implemented. The message related by Director Ryan was that the department needed to do a better job of scheduling the lieutenants at the facilities to ensure shift coverage.

Deputy Director Guevara stated that prior to this, in Jail Operations, each facility had two (2) lieutenants scheduled on each shift. Deputy Director Guevara stated that looking at the staffing, they realized that this was not the best way to ensure manpower coverage, because even at the largest facility, which was MWDC, two lieutenants on duty at one time, was "overkill." They were trying to spread the lieutenants out in such a manner where there would be lieutenant coverage "twenty-four, seven."

Deputy Director Guevara recalled that in October 2007, when she and Director Ryan first discussed the proposed changes with the chiefs and captains, they instructed them to talk with the lieutenants and get their feedback about the changes.

68-PC-HDQTRS-08

Timothy P. Ryan, Director

Deputy Director Guevara stated that approximately one (1) week prior to the meeting on February 5th, they met with the captains and asked about the feedback they had received from the lieutenants, and what the schedule would look like. The captains came up with a schedule, and it was sent out as a draft. Deputy Director Guevara said that this was done so that the lieutenants could review it and give feedback on it prior to the February 5th meeting.

On February 5th, when Director Ryan met with the lieutenants and spoke to them about the changes, there was obvious tension from the lieutenants. The lieutenants were against any shift changes because it meant that some of them would lose their weekend days off. Deputy Director Guevara said that these changes were the only way that they could guarantee lieutenant coverage as close to the twenty-four, seven schedule they sought.

During the meeting, some of the lieutenants said that they had never been spoken to about the changes. The lieutenants did not feel that it was fair because they were only learning of the changes at that moment. Director Ryan told the lieutenants that they needed to move ahead and pointed out that these were the same types of changes that were required of the sergeants.

A break was given to the group and the captains remained. Director Ryan spoke to the captains, because he had given them specific instructions previously to speak to the lieutenants about the changes. One or two of the captains stated that they had talked to their lieutenants about the changes, and now the lieutenants were saying that they had no knowledge about it.

After the break, Director Ryan instructed Deputy Director Guevara to speak with the lieutenants about the schedule issues. Deputy Director Guevara asked everyone to leave except the lieutenants because she wanted them to have the opportunity to work out the schedule among themselves.

Deputy Director Guevara recalled that the subject of morale came up earlier that day when Director Ryan addressed the group. One of the lieutenants stated that part of being a lieutenant was being able to have the weekends off. Director Ryan responded by telling the lieutenants that he disagreed with that. Director Ryan told them that once they took the oath and swore to do the job, their lifestyle was no longer first place. Director Ryan further told the lieutenants that their service to the county took first place and then they tried to match up lifestyles with the service to the county.

Deputy Director Guevara stated, "That didn't sit well, or maybe what was said, I don't think that they were hearing what they heard and they weren't listening to what was being said." Deputy Director Guevara said that when she began to speak to the lieutenants, she was trying to "drive the point home" that they all had a higher responsibility to serve the department and to be the role models for the staff.

68-PC-HDQTRS-08

Timothy P. Ryan, Director

Deputy Director Guevara said that she started her meeting with the lieutenants by showing them a video of a commercial that depicted an individual pushing a huge ball up a steep mountain. The announcer was saying, "Why push? Why change? Why grow? Why dream? Questions you don't have to ask yourself when you never say, it's good enough. When you never say, it can't be done. When you never say, never."

Deputy Director Guevara said that this was her "intro" into saying, "Listen, this is a very professional department, and every time I ask the question how many people want to raise the bar. How many want a more professional organization, everybody raises their hands, but we can't achieve that without personal sacrifice."

Deputy Director Guevara told the lieutenants that sometimes they (the lieutenants) are asked to do things that they (command staff) know are difficult, but they expect it to be done. Deputy Director Guevara reminded the lieutenants that they were all leaders. Deputy Director Guevara further told them that sometimes they have to ask individuals to do things that they don't want to do and sometimes as leaders they have to make decisions that people are not happy with. Deputy Director Guevara said, "At that point I said, me personally, I don't give a rat's ass about making an individual happy."

Deputy Director Guevara told the lieutenants that what she cared about was each one of them going home safe to their families. About each one of them having the resources needed to get their jobs done. Deputy Director Guevara further told the lieutenants that the department was presently going through a difficult time financially, but they still had to get the job done.

Deputy Director Guevara said that she did not make the statement toward any of the lieutenants. Deputy Director Guevara said that she wanted to let the lieutenants know that it was not her stance as the deputy director of corrections, but as an individual, that she did not give a rat's ass about making an individual happy. Deputy Director Guevara said, "I can understand, I think hindsight is 20/20. I can understand about them (referring to the lieutenants) being upset."

Deputy Director Guevara said that she was a little disappointed that after playing the video to help the lieutenants visualize and realize that they had to step up, because the sergeants, corporals and officers expected them to, that they were not willing to take the lead and make personal sacrifices. "So when I said it, did I say it to offend anybody, absolutely not. Did I say it to direct it to anyone, absolutely not. It wasn't said in a response to any question."

Deputy Director Guevara said that the word "morale" was never brought up in either her response, nor was it a part of her response. Deputy Director Guevara believes that morale is important, and comes from individuals taking personal responsibility. Deputy Director Guevara believes that the subject of morale was brought up in the earlier meeting and neither she nor the director said that morale was not important.

Timothy P. Ryan, Director

Deputy Director Guevara said that some of the people that took offense to what was said assumed she meant that she did not care about them. Deputy Director Guevara said that after she made the statement, she immediately followed with what she cared about, which was the staff going home safe, and having the necessary tools and resources to get the job done. Deputy Director Guevara said that her focus was on the staff and the department and not on the individual who might not be happy because they had to do something they did not like.

Deputy Director Guevara told the lieutenants not to take what was being asked of them personal, and not to look at how it would affect them, but to look at how it would affect the staffing. Deputy Director Guevara said that they needed as much 24 hour coverage as possible and if it meant that the lieutenants with the least seniority had to give up their weekends to accomplish this goal, that is what had to happen. Deputy Director Guevara gave the lieutenants her word that if they could come up with a viable plan to provide the coverage needed, she would go with it. Deputy Director Guevara asked Lieutenant Davis to take the lead, work together with the lieutenants and come up with a plan.

The lieutenants also asked about the administrative lieutenant's position, but Deputy Director Guevara reminded them that the majority of the administrative lieutenants were junior lieutenants because the veteran lieutenants did not want the positions. The administrative lieutenants often worked additional hours to complete the job. Deputy Director Guevara was opposed to including the administrative lieutenants in the new scheduling.

Some of the lieutenants wanted the changes to take place on the next bid period, but Deputy Director Guevara said no, the changes would occur with the upcoming bid rotation. She told them that there were enough lieutenants present to work together and come up with a plan. Initially, the lieutenants were given one (1) hour to complete the task, but Deputy director Guevara told them that if they wanted to stay longer to work something out, she would be there for them. Deputy Director Guevara later told the lieutenants that they could return on Friday with their proposal, but they all had to agree with it.

On Friday, Lieutenants Davis, Aaron Jackson, Badge #3229, and James Hobson, Badge #3595, met with Deputy Director Guevara and presented a schedule that all of the lieutenants had agreed to. After reviewing the schedule, Deputy Director Guevara agreed with it and said that it was much better than the initial one.

Regarding the allegation that on February 5, 2008, during a staff meeting, Deputy Director Guevara made an offensive comment to the staff by saying that she did not give a rat's ass about morale, Deputy Director Guevara stated, "That's not true."

Deputy Director Guevara added that the information in the letter written by SCAAGE, which pertained to her statement, was faxed all over the department, prior to Internal Affairs having an opportunity to investigate it. Deputy Director Guevara stated, "With

Timothy P. Ryan, Director

that being said, I think if enough people keep reading it, and reading it, the perception is 'that must be what she said.' So, I just think it is important to note that with those faxes going all over the place, you know, that's not what I said. That might have put some words in some of the folks mind." Deputy Director Guevara believes that the faxes might have compromised the investigation, because it put "words out there" for some people who were already feeling a certain way, to remember her statement as being what was stated in the faxes, but in actuality it was not.

(For further details, refer to taped statement)

<u>Prior Sustained Complaints - Similar</u>

1.    None

**Additional Information**

1.    On February 29, 2008, Mr. Walter Clark presented three (3) letters to the Internal Affairs Unit regarding his complaint against Deputy Director Guevara. (See Official Records # 3, 4 & 5)

2.    Upon reviewing a copy of the list of staff members who were in attendance for the captains' and lieutenants' meeting in February, I, Sergeant Smith, cross referenced it with a list of potential witnesses provided by Mr. Clark. Attempts were made to contact some of the witnesses without success. In the interest of time, the investigation proceeded by obtaining statements from a representative number of those in attendance. (See Official Records #6 & 7)

**Official Records**

1.    Weaver Act Memorandum

2.    New Case Update & Preliminary Complaint Report from Mr. Walter Clark, dated February 22, 2008

3.    Letter addressed to Chief Mary Ann Puig, from Mr. Walter Clark, dated February 20, 2008, re: Allegations of Conduct Unbecoming an Officer DSOP #1.1.016, Respect Toward Fellow Workers DSOP.

4.    Letter from A.J. Melton, President Progressive Correctional Officers Association, addressed to Carlos Alvarez, Executive Mayor, dated February 8, 2008.

5.    Letter from Cory J. Barney, President Organization of Minority Corrections Employees, dated February 11, 2008

68-PC-HDQTRS-08

Timothy P. Ryan, Director

6.      Letter addressed to Chief Mary Ann Puig, Supervisor, from Mr. Walter Clark, dated February 27, 2008, re: Complaint Against Deputy Director Marydell Guevara

7.      Letter addressed to Sergeant Dorothy Smith, Investigator, dated March 14, 2008, re: Subject Officer Deputy Director Marydell Guevara IA #68-PC-HQTRS-08

8.      Complainant or Civilian Witness Statement and Departmental Employee Witness Statement Forms

9.      Subject Employee - Deputy Director Marydell Guevara, Badge #3257
        a.      Notification of Allegations
        b.      Rights of Subject Officer
        c.      Subject Employee Statement


**Statements**

| 1.  | Mr. Walter Clark                   | - | Taped |
|-----|------------------------------------|---|-------|
| 2.  | Lieutenant Elijah Cone             | - | Taped |
| 3.  | Lieutenant Jennifer Bailey         | - | Taped |
| 4.  | Lieutenant Yvette Richardson       | - | Taped |
| 5.  | Lieutenant Doris Albury            | - | Taped |
| 6   | Lieutenant Curtis Davis            | - | Taped |
| 7.  | Lieutenant Norman De Milio         | - | Taped |
| 8.  | Lieutenant Jorge Fuentes           | - | Taped |
| 9.  | Lieutenant Daniel Junior           | - | Taped |
| 10. | Lieutenant Tamara Key              | - | Taped |
| 11. | Lieutenant Cassandra Jones         | - | Taped |
| 12. | Lieutenant Lindsey Wilson          | - | Taped |
| 13. | Lieutenant Edgar Nieves            | - | Taped |
| 14. | Captain Susan Kronberg             | - | Taped |
| 15. | Lieutenant Lee Little              | - | Taped |
| 16. | Deputy Director Marydell Guevara   | - | Taped |


"I, the undersigned, do hereby swear, under penalty of perjury, that, to the best of my personal knowledge, information, and belief, I have not knowingly or willfully deprived, or allowed another to deprive, the subject of the investigation of any of the rights contained in ss. 112.532 and 112.533, Florida Statutes."

_____
Investigator/Sergeant

# Memorandum  MIAMI-DADE COUNTY

**Date:** August 20, 2008

**To:** Alina T. Hudak
Assistant County Manager

**From:** Timothy P. Ryan, Director
Corrections & Rehabilitation Department

**Subject:** Contact Report Closure Memorandum
Case #68-PC-HDQTRS-08

---

On July 17, 2008, I was asked to conduct a review of Administrative Inquiry #68-PC-HDQTRS-08. Pursuant to this, I have completed that review and would present the following as my findings:

I.  This inquiry was the result of a complaint from a non-employee regarding an allegation surrounding an event that this citizen did not attend.

> Citizen: Walter Clark
> P.O. Box 245261
> Pembroke Pines, Florida 33024
> Phone: (954) 272-2260

II.  The allegation involves an employee of MDCR;

> Employee: Marydell Guevara
> Title: Deputy Director
> Location: 2525 N.W. 62nd Street (Headquarters)
> Miami, Florida 33147

III. <u>Point of Concern</u>:  On February 5, 2008, a meeting of MDCR Lieutenants was held at the MLK Building.   During that meeting, Deputy Director Guevara was alleged to have made an inappropriate comment.  This comment was supposed to have indicated the words "rat's ass" and, per the non-employee, who relayed the information, it upset several employees.  (Note: Since the reporting person was a non-employee, the inquiry required contact with employees actually in attendance to determine its validity and/or impact.)

IV. As such, an administrative inquiry was made which lead to the following:

1.  There was a quarterly meeting held at the MLK Building on February 5, 2008. This meeting discussed issues, concerns, and training needs of Lieutenants and Captains.   At this particular session, there was a discussion about the changing of the lieutenants' work schedules to improve overall 24 hours departmental leadership coverage.  This necessarily meant shift changes in April 2008 for Lieutenants.

Relative to this change, information surfaced that the lieutenants said they were not apprised of the change and they generally expressed concern. As a result, Deputy Director Guevara took some time, not originally planned in the workday schedule, to discuss it with the lieutenants (absent Captains in attendance).

It was <u>alleged</u> that, during this time, Deputy Director Guevara made an inappropriate comment, using the term "rat's ass", that was offensive per the complainant.

# Memorandum

**MIAMI-DADE COUNTY**

**Date:**      September 23, 2008

**To:**        File

**From:**      Timothy P. Ryan, Director
               Corrections & Rehabilitation Department

**Subject:**   Case Closed (re: Informal Discussion and Action regarding Case #68-PC-HDQRTRS-08)

Pursuant to my assessment of the above Administrative Inquiry, it was determined that the case would be disposed of as not sustained. However, there would be a need for a discussion with me regarding the impressions our comments sometimes make in our efforts to communicate with staff.

That conversation occurred on Tuesday, September 9, 2008, and Deputy Director Guevara also had a conversation with lieutenants at the Lieutenant/Captain training day. She apologized for any offense anyone may have felt.

I consider the matter now closed.

TPR/lhg

Contact Report Closure Memorandum Case #68-PC-HDQTRS-08
Page 2

2.  In an effort to determine what might have been said, its context, and its impact, the
    following attendees were interviewed. The results were as follows:

    A.  Lt. Elijah Cone said that Deputy Director Guevara said "(she) did not give two rats'
        ass about trying to make anybody happy". Lt. Cone said that he took "offense".

    B.  Lt. Bailey said that Deputy Director Guevara said "(she)" did not give two rats' ass"
        about how they felt. Lt. Bailey said she was "shocked" by the statement.

    C.  Lt. Richardson said that Deputy Director Guevara said she was just using a "figure
        of speech". She said she was not offended and "I am very much surprised that
        this particular statement would be investigated".

    D.  Lt. Davis said that Deputy Director Guevara said "(she) did not give two rats' ass
        about morale". He said he was not offended.

    E.  Lt. Albury said that Deputy Director Guevara did not make any comment regarding
        "rats' ass". She said that nothing occurred at the meeting that offended her.

    F.  Lt. DeMilio said that Deputy Director Guevara said something about "rats' ass".
        He said she did not make it to anyone personally and he was not offended.

    G.  Lt. Fuentes said that Deputy Director Guevara said that "(she) did not give two
        rats' ass about morale". He said he was offended by the statement.

    H.  Lt. Jones said that Deputy Director Guevara said that (she) said something about
        not giving a "rats' ass" about morale. She said she was a "little shocked", but did
        not respond as being offended.

    I.  Lt. Wilson said that Deputy Director Guevara said "(she) could give a rats' ass
        about morale". He said he was surprised by the statement, but did not indicate he
        was offended.

    J.  Lt. Little said that Deputy Director Guevara said she could give "two rats' ass"
        about morale. He said he was shocked, but not offended.

    K.  Lt. Key said that she did not recall Deputy Director Guevara saying anything
        regarding "rats' ass". She said she never heard Deputy Director Guevara say
        anything disrespectful.

    L.  Lt. Junior said that he did not recall Deputy Director Guevara make any statement
        regarding "rats' ass". He said he did not hear anything he thought was offensive.

    M.  Lt. Bridgett Cone said that Deputy Director Guevara made a statement that she
        did not give a "rats' ass" about morale. Lt. Bridgett Cone said she was not
        offended.

Contact Report Closure Memorandum Case #68-PC-HDQTRS-08
Page 3

    N. Lt. Nieves said that he did not recall Deputy Director Guevara make any statement regarding a "rats' ass". He said that she <u>did not make any statements</u> that he felt <u>were offensive.</u>

    O. Captain Kronberg said that Deputy Director Guevara said "(she) did not give two rats' ass about morale, basically". Captain Kronberg said that there were "a lot of upset people". In particular, she recalled, Lt. Davis being very upset. (Note: See I.D. above where Lt. Davis said in his statement that the "was not offended.)

Of the fourteen (14) lieutenants interviewed, three (3) indicated that they were offended and eleven (11) indicated that there were not offended. Given this, <u>the preponderance of the evidence is that the comment, whatever it may have been, was not offensive.</u>

3. However, given the sensitivity of today's world, and the position of the Deputy Director, it is important to ask Deputy Director Guevara what she may have actually said. To this, she said that she had been giving a response to a question about the lieutenants shift changes and the lieutenants responsibilities. She said that the lieutenants were not happy about the changes and were complaining.

She told them that sometimes leaders have to make decisions, with which, people are not happy. She said "At that point, (she) said, me personally, I don't give a rat's ass about making an individual happy", and went on to explain the importance of the County's and department's needs.

She went on to say that, in hindsight, she could understand that they might be upset. However, she reaffirmed that she never mentioned morale and further was a little disappointed in the response of the lieutenants generally.

4. Deputy Director Guevara said that the meeting ended with her granting the lieutenants the ability to adjust the previously developed schedule in an effort to mitigate concerns while meeting department objectives. This was done, the schedules changed, and the lieutenant's amended plan was implemented in April, 2008.

V. <u>Conclusion</u>: Upon due consideration of the allegation on this matter, the information and evidence developed, I have determined that Deputy Director Guevara <u>is not</u> culpable for an offensive comment. Therefore, the disposition in this matter is <u>not sustained</u>.

However, even though I find that there is <u>no</u> misconduct in this matter, it does reinforce how careful we all must be in the manner in which we communicate with staff. There will be no formal action in this matter, but I will discuss it informally with Deputy Director Guevara with the intent to improve our mutual communication skills in the future.

VI. <u>Resolution/Recommendations</u>:

Relative to this case, I would therefore recommend the following:

1. The case be closed with a disposition of not sustained;

2. There be no specific procedural changes to policy;

Contact Report Closure Memorandum Case #68-PC-HDQTRS-08
Page 4

3.   I am hereby directed to have an informal discussion with Deputy Director Guevara regarding improving our communication techniques.

**APPROVED**                    **DISAPPROVED**

_____       _____
Alina T. Hudak                  Alina T. Hudak
Assistant County Manager        Assistant County Manager

TPR/lhg

c:   MaryAnn Puig, Chief
     Professional Compliance Bureau

Exhibit I

D03-046

# DISCIPLINARY ACTION REPORT

| | | | |
|---|---|---|---|
| Employee Name | ROOT, SUSAN | Date | February 20, 2003 |
| Classification | Administrative Secretary | Date of Hire | 12/29/80   SS# 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 |

Employee Status:

| C & R | Administration Division | Training Bureau |
|---|---|---|
| Department | Division | Area |

☑ Permanent ☐ Probational ☑ Other

You are hereby charged with violating the County's Personnel Rules, Chapter VIII, Section 7 Paragraph:

( D )  That the employee has violated any lawful or official regulation or order, or failed to obey any lawful and reasonable direction given him by a supervisor, when such violation or failure to obey amounts to insubordination or serious breach of discipline which may reasonably be expected to result in lower morale in the organization or result in loss, inconvenience or injury to the County service or to the public.

(   ) _____

(Attach additional sheets as necessary)

FACTS:        (Description of specific actions, statements made by employee; attach stamens of witness , if any, attach copies of other documents if appropriate.  Also, state reasons for recommendations.)

At 8:00 a.m., on February 19, 2003, while I was on my way to the P.C. Lab for the second day at Corestat Training, you approached me. You stated that you needed to take an extra thirty minutes of lunch time because of a personal errand. I told you that you needed to make sure you signed in upon your return. You appeared puzzled by my statement and asked why. I replied that you needed to sign the Corestat class-training roster. At that point, you told me that you didn't remember about the class. I told you that it surprised me you would not have known, considering you had typed and distributed the schedule to departmental personnel. I proceeded to go to class. At approximately 8:40 a.m. I heard several knocks on the PC Lab door. Because I did not want the instructor to be interrupted, I answered the door. You were standing outside attempting to come in. I informed you that you were late for the class and would require re-scheduling. I then instructed you to write me a memo explaining your tardiness. Your behavior represents a disregard for the importance of the Bureau's mission. As the Training Bureau's secretary, it is unacceptable for you to be late for classes in our own Bureau, especially when the training is MANDATORY. In the future, I expect you to comply with directives given you.

Any further violations of this nature may lead to progressive disciplinary action, up to and including termination.

(Attach additional sheets as necessary)

_____ 3/10/03
Supervisor's Signature/Date

In  signing this Report I  acknowledge only that it has been discussed with me and that I have received.  I understand that I may respond orally or in writing and that such response will be made part of this Report and taken into consideration prior to a final determination being made.

_____ 3/12/03
Employee's Signature/Date

Response will be delayed because of my objection

RECOMMENDED ACTION: ☒ Written Reprimand       ☐   Day(s) Suspension  ☐ Demotion
                    ☐ Dismissal              Effective Date(s) _____

FINAL ACTION: _____   FINAL APPROVAL: _____ 3/12/03
                                              Signature                Date

                                              Training Bureau Commander
                                              Title

DISTRIBUTION:  White copy to Employee - Green to Personnel Division;
               Yellow to Division File.

# M E M O R A N D U M

**TO:**  Sheila Siddiqui
Assistant Director
Planning and Research Bureau

**FROM:**  Susan Root

Planning and Research Bureau

**DATE:**  November 8, 2002

**SUBJECT:**  Sick Leave of Absence

---

I am respectfully requesting two weeks of Sick Leave. I would very much like to begin that time, if possible, Tuesday, November 12, 2002. Provided there are no further health complications, I would return to work on Monday, November 25, 2002. Commander Browne is out today and I spoke with Mr. Jody Fitzgerald, who suggested I go ahead and contact you so that I may start my recuperation immediately. Please see the attached letter from my doctor.

I have already spoken to my new supervisor Commander Miriam Kovacs. She understands my needs, and has told me to seek the medical time that I need. Therefore, I am asking whether I need to send a letter to Director Spears up the Chain of Command, or whether you can just approve my leave.

If you require anything further please let me know.

Attachment

cc: Commander Terry Brown
    Nancy Fox-Hicks, Par Supervisor


APPROVED                    DATE          DISAPPROVED          DATE

_____    11-8-02    _____    _____
Shelia Siddiqui                                Shelia Siddiqui
Assistant Director                           Assistant Director

Miami-Dade
Corr. & Rehab. Dept.
Received
DEC 16 2002
File Room
Personnel Bureau

*"We Serve To Make a Difference"*

Exhibit J

16400 NW 2nd Ave., #203
North Miami, FL 33169
November 6, 2002

ATTN: Paul Jacobson, D.O.
Fax #: 305-945-0173

RE: Susan Root

Dear Dr. Jacobson,

Ms. Root is currently under my care and has been under my care since October 2, 2002 for
psychotherapeutic services.   Ms. Root initially sought treatment due to an acute stress reaction,
which has lead to a depressive disorder.  She currently presents with low mood, anxiety,
tearfulness, and insomnia.  She is being treated by her primary physician, and is receiving the
medication Zoloft for depression and anxiety.

The symptoms of depression and anxiety were triggered by changes in Ms. Root's personal and
professional life, and her symptoms are escalating despite these interventions.
It is my recommendation that Ms. Root would benefit psychologically by taking a leave of
absence from work.

Major Depression is a serious medical illness, and it would be prudent for Ms. Root to take the
time to treat her symptoms so that they do not escalate.  A "leave" from work would help her
accomplish this.

If you need further information please do not hesitate to contact me at 305-947-7740.


Sincerely,

Debra E. Rosen, LCSW
Psychotherapist

Miami-Dade
Corr. & Rehab. Dept.
Received
DEC 16 2002
File Room
Personnel Bureau

Exhibit K

**MIAMI-DADE COUNTY COMMISSION ON ETHICS AND PUBLIC TRUST**

**COMPLAINT PROCEDURE**

Please type or print legibly, and attach additional pages if necessary

| Name of Complainant | Susan Root | | | | |
|---|---|---|---|---|---|
| Address | 1163 NE 109 St. | | | | |
| City | Miami | State | FL. | Zip | 33161 |
| Home Phone | 305-895-3778 | Work Phone | | | 786-263-5560 |

Respondent Information.  Provide the Name(s), title(s), department(s), and business address(es) and telephone(s) of the person(s) or entity(ies) who committed the alleged violation(s)

nothy P. Ryan, Director, Corrections and Rehabilitation Department,
rtin Luther King Plaza, 2525 N. W. 62 St., Miami, Fl. 33147
one: 786-263-6000

riam Kovacs, Commander Training Bureau, Corrections
l Rehabilitaiton Department, Martin Luther King
za, 2525 N. W. 62 Street, Miami, Fl. 33147
ne: 786-263-5959

Wanda McMullen, Lieutenant, Training Bureau, Corrections and
Rehabilitation Department, Martin Luther King Plaza,
2525 N. W. 62 Street, Miami, Fl. 33147
Phone: 786-263-5959

Denise Bendross, Chief, Administration, Corrections and Rehabilitatic
Luther King Plaza,
2525 N. W. 62 Street, Miami, Fl. 33147
Phone: 786-263-5989

Type of Allegation(s).  Check the appropriate box(es) below indicating the type of allegation(s) state in this complaint.

[ ✓ ] Code of Ethics / Conflict of Interest
(Miami-Dade County code 2-11.1 (a)-(q), (t) and (u))

[ ] Lobbyist Registration and Reporting
(Miami-Dade County Code 2-11.1 (s))

[ ] Campaign Activities
(Miami-Dade County Code 2-11.1.1))

[ ] Campaign Activities
(Miami-Dade County Home Rule Charter)

What other facts are you aware of which are not based on your personal knowledge?

The Corrections And Rehabilitation Internal Affairs
Unit should have gone Ahead And filed a
Police report knowing the badge is or was still missing
I do not know if they did or not.

Exhibit L

Names and addresses of persons other than yourself (if any) who are or may be witnesses to the above described activities. (Attach additional sheet to this form if necessary)

Fred Crawford, Commander, Rehabilitative Services
Corrections and Rehabilitation Department
Martin Luther King Plaza
2525 N. W. 62 Street, Miami, Fl. 33147
Phone: 786-263-6079

Jacqueline Jones, Administrative Secretary
Corrections and Rehabilitation Department
Martin Luther King Plaza,
2525 N. W. 62 Street, Miami, Fl. 33147

Phone: 786-263-5980

Mercie Lantes, Administrative Secretary
Corrections and Rehabilitation Department
Martin Luther King Plaza
2525 N. W. 62 Street, Miami, Fl. 33147
Phone: 786-263-5980

Doris King, Correctional Officer
Training Bureau
Phone: 786-263-6000
Hostile Witnesses:

Nancy Vinock, Asst. Director, Corrections
and Rehabilitaiton Department, Martin Luther King
Plaza, 2525 N. W. 62 Street, Miami, Fl. 33147
Phone: 786-263-5899

Edwin Cambridge, Security Captain
Corrections and Rehabilitation Department
Phone: 786-263-6529

Ephriam Kelly, Fair Employment Rep.
Corrections and Rehabilitation Department
786-263-6099

Documents or other sources of information (if any) that relate to or are proof of the violation. Attach copies of documents to this form if available. (Attach additional sheets to this form if necessary.)

The documents attached to this complaint are listed after an explanatory narrative. There are 20 documents attached.

1. The DARs were not served until after I left the supervision of the person who wrote the DARs.
2. The punishment on each of the DARs was excessive.
3. The DAR complaints were unfounded.
4. The DARs were used to mask the real issue of a missing badge and a supervisor who was breaking policy, procedure and the law.
5. By Florida State mandate the Internal Affairs case #260-CR-TB-07 should have been closed within 180 days and now it is more than 240 days. The reason the investigator does not want to resolve the issue is that she, herself, is involved.

See Attached Documents
including Complaint Narrative, List of Attachments
And Attachments.

_Signature of Complainant_

## OATH

I, the person bringing this complaint, do depose on oath or affirmation and say that the facts set forth in the foregoing complaint and attachments hereto are true and correct to the best of my knowledge and belief.

STATE OF FLORIDA

COUNTY OF __miami - dade__

Sworn to (or affirmed) and subscribed before me this __5th__ day of __Feb.__, 20 08.

by __Susan O. Root_____. He/She is personally known to me or
(Name of person making statement)

has presented __D/L No. R300-794-52-509-0__ as identification.
(Type of Id presented ex: State DL#, State ID Card", etc.)

__Soledad De Sales__
(Signature of Notary Public-State of Florida)

NOTARY PUBLIC-STATE OF FLORIDA
Soledad De Sales
Commission # DD399672
Expires:  FEB. 24, 2009
BONDED THRU ATLANTIC BONDING CO., INC.

(Print, Type or Stamp Commissioned Name of Notary Public)



| | | |
|---|---|---|
| Florida Department of<br>Law Enforcement<br><br>Gerald M. Bailey<br>*Commissioner* | **Office of Executive Investigations**<br>Post Office Box 1489<br>Tallahassee, Florida 32302-1489<br>(850) 410-8240<br>www.fdle.state.fl.us | Charlie Crist, *Governor*<br>Bill McCollum, *Attorney General*<br>Alex Sink, *Chief Financial Officer*<br>Charles H. Bronson, *Commissioner of Agriculture* |

February 29, 2008



Ms. Susan Root
1163 N.E. 109 Street
Miami, FL  33161

RE: FDLE File EI-73-7500-215-162

Dear Ms. Root:

Your recent letter to the Florida Department of Law Enforcement (FDLE) was forwarded to the Office of Executive Investigations for review.  In your letter, you alleged that the Miami-Dade County Corrections and Rehabilitation Department retaliated against you for "whistle blowing" in regard to a lost badge.

Upon review of the information, it was determined that your complaint does not warrant an investigation by our office. Therefore, by copy of this letter, our office is sending your complaint letter to Miami-Dade Inspector General Christopher Mazzella for review and any action he deems appropriate.  Should you have any questions regarding our review, you may contact Crime Intelligence Analyst Amanda Prochaska at (850) 410-8240.

Sincerely,

Mark Perez
Chief Inspector
Office of Executive Investigations

MP/ap

cc:   Honorable Christopher Mazzella, Inspector General, Miami-Dade
      Timothy Ryan, Director, Miami-Dade County Corrections and Rehabilitation

Exhibit M

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 09-16551 CA 32

SUSAN ROOT,

             Plaintiff,

vs.

MIAMI-DADE COUNTY,

             Defendant.

_____/



## DEFENDANT MIAMI DADE COUNTY'S
## MOTION TO DISMISS COMPLAINT

      Defendant Miami-Dade County ("the County"), a political subdivision of the
State of Florida, pursuant to the Florida Rules of Civil Procedure files this motion to
dismiss and states:

      1.     Plaintiff filed a complaint with a long list of general allegations that are
incorporated by reference to a claim for retaliation.  In the count for retaliation, the
Complaint makes alleges that disciplinary actions were taken against her unlawfully and
that she received harsher treatment but the retaliation count fails to indentify what
disciplinary actions plaintiff claims are unlawful.

      2.     The Complaint should be dismissed because it is a shotgun pleading.  See
*Johnson Enterprises of Jacksonville v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir.
1998)(describing shotgun pleadings as follows: "These types of cases invariably begin



EXHIBIT

B

with a long list of general allegations, most of which are immaterial to most of the claims

for relief.  The general allegations are incorporated by reference into each count of the

complaint…"  The Court describes the consequences of such pleadings as follows:

> If the trial judge does not quickly demand repleader, all is lost –
> extended and largely aimless discovery will commence, and the
> trial court will soon be drowned in an uncharted sea of
> depositions, interrogatories, and affidavits.  Given the massive
> record and loose pleadings before it, the trial court whose time is
> constrained by the press of other business, is unable to squeeze
> the case down to its essentials; the case therefore proceeds to trial
> without proper delineation of issues. . . . The result is a massive
> waste of judicial and private resources; moreover, 'the litigants
> suffer, and society loses confidence in the court[s'] ability to
> administer justice.' *Ebrahimi v. City of Huntsville Board of Ed.,*
> 114 F.3d 162, 165 (11th Cir. 1997).

*Johnson Enterprises of Jacksonville v. FPL Group, Inc.,* 162 F.3d 1290, 1333

(11th Cir. 1998).   Because the Complaint is a shotgun pleading, it must be dismissed.

2.     The Complaint must also be dismissed because Plaintiff failed to allege

exhaustion of administrative or contractual remedies related to the Plaintiff's exempt

classification.

3     The allegations of the Complaint that do not relate to Plaintiff's 30-day

suspension must also be dismissed because they are outside the scope of Plaintiff's

EEOC Charge attached as Exhibit A.  Therefore, all allegations other than those

regarding the 30-day suspension must be dismissed.   This part of the problem with the

shotgun nature of the Complaint as well.

WHEREFORE, Defendant respectfully requests that the Amended be dismissed.

Respectfully submitted,

R.A. CUEVAS, JR.
MIAMI-DADE COUNTY ATTORNEY

By:_____
Eric A. Rodriguez
Assistant County Attorney
Florida Bar No. 970875
Miami-Dade County Attorney's Office
Stephen P. Clark Center, Suite 2810
111 N.W. 1st Street
Miami, Florida 33128
Tel:  305/375-5151
Fax:  305/375-5634

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed this 9th day of  April 2009 to:

William Pena Wells, Esq.
PO Box 640911
North Miami Beach, Florida 33164-0911

_____
Assistant County Attorney

℥JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

SUSAN ROOT

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

William Pena Wells, Esq.
Post Office Box 640911
North Miami Beach, FL  33164-0911 - Tel: 305-898-0243

## DEFENDANTS

MIAMI-DADE COUNTY

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

Attorneys (If Known)

Eric A. Rodriguez, Assistant County Attorney

**(d)** Check County Where Action Arose:  ✓ MIAMI- DADE  ❑ MONROE  ❑ BROWARD  ❑ PALM BEACH  ❑ MARTIN  ❑ ST. LUCIE  ❑ INDIAN RIVER  ❑ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

❑ 1  U.S. Government
      Plaintiff

✓ 3  Federal Question
      (U.S. Government Not a Party)

❑ 2  U.S. Government
      Defendant

❑ 4  Diversity
      (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                  and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❑ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ❑ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

Dade 09cv 21041 - Gold/McAliley

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❑ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ◼ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. Security | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information Act |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | ❑ 900 Appeal of Fee Determination |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | **IMMIGRATION** | | Under Equal Access to  Justice |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | ❑ 462 Naturalization Application | | ❑ 950 Constitutionality of State |
| | Employment | ❑ 550 Civil Rights | ❑ 463 Habeas Corpus-Alien | | Statutes |
| | ❑ 446 Amer. w/Disabilities - Other | ❑ 555 Prison Condition | Detainee | | |
| | ❑ 440 Other Civil Rights | | ❑ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

❑ 1 Original
    Proceeding

✓ 2 Removed from
    State Court

❑ 3 Re-filed-
    (see VI below)

❑ 4 Reinstated or
    Reopened

❑ 5 Transferred from
    another district
    (specify)

❑ 6 Multidistrict
    Litigation

❑ 7 Appeal to District
    Judge from
    Magistrate
    Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ❑ YES  ✓ NO      b) Related Cases ❑ YES  ✓ NO

JUDGE _____         DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

42 U.S.C. Section 2000, et seq.

LENGTH OF TRIAL via _7_ days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ✓ Yes  ❑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

s/Eric A. Rodriguez

DATE

April 20, 2009

FOR OFFICE USE ONLY

AMOUNT $350.00   RECEIPT # 999406

04/20/09